Commonwealth *v.* Patti et al., Appellants.

Argued March 15, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Michael V. Franciosa,* with him *Gus Milides,* for appellants.

*Elwood M. Malos,* Assistant District Attorney, with him *Bernard V. O'Hare, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., April 15, 1965:

The three appellants were convicted of conspiracy to set up and establish gambling devices: Todaro and Patti, respectively, of pool selling and bookmaking, and Patti and Gill of occupying certain premises for gambling purposes and permitting them to be used for registering bets and wagers. Their motions for new trials or for the arrest of judgment having been overruled and sentences imposed, these appeals followed.

One of the questions being presented to us at this time relates to the legality of the search warrants by virtue of which much of the evidence against appellants was procured. Proper motions to suppress this evidence made before trial were overruled after hearing and objections to the admission of the evidence at the trial were also made and overruled.

The warrants in question were issued by Alderman D. Y. Schwab of the City of Easton on the request of Chief County Detective DiGiacinto of Northampton County, who had not investigated the charges against appellants. The trial court that heard the motions to suppress found that the warrants had been issued properly under the following circumstances.

On the morning of April 4, 1962, the Chief County Detective of Northampton County went to the office of Dudley Y. Schwab, an alderman of the City of Easton, to secure search warrants against defendants Todaro, Patti and "John Doe". According to the alderman, the detective, while unsworn, told him there was gambling paraphernalia in the places thereafter described in the warrants and on the persons of defendants. The detective informed the alderman of the names of the persons and the places in the city where the alleged gambling was occurring and its paraphernalia was located. The alderman testified, that based upon the information given him by the detective, he was of the opinion that search warrants should be issued. He, thereupon, prepared three affidavits in the form of informations.

The information with respect to the defendant Patti was to the effect that, "there is located on the person of Andrew Patti gambling paraphernalia and that the said Andrew Patti resides at 125 S. 13th Street, Easton, Pa., and your affiant (the Chief County Detective) verily believes, and there is just cause to suspect, and that your affiant does suspect that the said defendant has concealed on his person and at his said address gambling paraphernalia, and your affiant asks that a search warrant be issued for the said gambling paraphernalia . . ." The John Doe warrant was with respect to an apartment building located at 507 Northampton Street and it is alleged in the information that, "your affiant verily believes and there is just cause to

suspect, and that your affiant does suspect that the said defendant has concealed in the said brick building located at said address, gambling paraphernalia . . ." The information with respect to defendant Todaro was to the effect that, "there is located on the person of Steve Todaro gambling paraphernalia . . . and your affiant verily believes, and there is just cause to suspect, and that your affiant does suspect that the said defendant has concealed on his person and at his said address gambling paraphernalia . . ."

After the alderman prepared these informations, he caused the chief county detective to raise his right hand and solemnly swear that the facts set forth therein were true and correct.

As the trial and post trial motions were disposed of on or before May 25, 1964, *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 723 (1964), decided by the United States Supreme Court on June 15, 1964, and *United States v. Ventresca*, 380 U.S. 102, 85 S. Ct. 741, decided March 1, 1965, were not available to the trial court. These are two cases upon which our present decision must rest.

*Aguilar* states clearly and unequivocally that the standard for obtaining a search warrant is the same under the Fourth and Fourteenth Amendments to the United States Constitution and the magistrate who is to issue a search warrant must first be supplied with some of the underlying circumstances on which the affiant who is seeking the warrant or his informant, if the application for the warrant is based on hearsay, has based his conclusion that the law is being violated. A warrant may not be issued on the suspicion, belief or conclusion of such persons. It may be issued only after the magistrate concludes from facts presented to him that such is the case, or in other words, that there is reasonable cause for issuing the warrant.

Our study of this record and of the opinion of the lower court shows clearly that the standard was not met in this case. No facts or underlying circumstances were presented to the magistrate. He issued the warrants solely upon the belief, suspicion, or conclusion of Detective DiGiacinto or his informant. In the light of our conclusion in this regard we need not pass on the propriety of the procedure followed by the magistrate in preparing the warrant first and then administering the oath to the procurer.

We cannot accept the argument which counsel for the Commonwealth offers to distinguish the present case from *Aguilar*. Primarily we see no difference in saying that "the standard for obtaining a search warrant is the same under the Fourth and Fourteenth Amendments" from "the standard of *reasonableness* is the same under the Fourth and Fourteenth Amendments." Secondly, Justice GOLDBERG in *Aguilar* specifically states, "Although Ker[1] involved a search without a warrant, that case must certainly be read as holding that the standard for obtaining a search warrant is *likewise* 'the same under the Fourth and Fourteenth Amendments.'" (Emphasis supplied).

The Act of March 31, 1860, P. L. 382, §60, 18 P.S. §1445, cited by Commonwealth's attorney, is not applicable. That is a statute in rem to permit the seizure and destruction of gambling equipment, which is subject to seizure with or without a search warrant, *Commonwealth v. Rich*, 174 Pa. Superior Ct. 174, 100 A. 2d 144 (1953), cert. denied, 347 U.S. 966, 74 S. Ct. 777, 98 L. Ed. 1108, and the validity of such a seizure does not necessarily depend on the validity of the search warrant. *Commonwealth v. Giambrone*, 183 Pa. Superior Ct. 283, 130 A. 2d 254 (1957). *Ker, Aguilar,*

---

[1] *Ker v. California*, 374 U.S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963).

and *Ventresca* would prevent the use of such property as evidence in a criminal prosecution if its seizure did not meet the required standard.

Since the aforesaid evidence was illegally seized, it was inadmissible in the trial of appellants. Therefore, a new trial must be awarded on all indictments and as to all appellants. For that reason we shall not decide the final issue before us which relates to telephone calls intercepted by the police officer who executed the search warrants.

Judgments reversed and new trials awarded on all indictments.

ERVIN, P. J., and WRIGHT, J., would affirm on the opinion of the court below.