## Commonwealth *v.* Campbell, Appellant.

Argued November 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Eugene Morris,* for appellant.

*Robert C. Reed,* Assistant District Attorney, and *John G. Good, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 23, 1971:

Judgment of sentence affirmed, and the defendant is directed to appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with the sentence, or any part thereof which had not been performed at the time the appeal was made a supersedeas.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was convicted of conducting a lottery. The issue on appeal is whether there was probable cause for the issuance of a search warrant pursuant to which certain items were seized and later admitted into evidence against appellant at trial. The search warrant was issued solely upon information related to a Justice of the Peace by the Chief of Police of the Aliquippa Police Force. Because neither the Justice of the Peace nor the Chief of Police made a written record of the statements offered in support of the issuance of the search warrant, the only evidence as to these supportive statements comes from their depositions.[1]

The Justice of the Peace's testimony is to the effect that in issuing the warrant he relied on the Chief's statements concerning his own personal observations. The Justice testified: "Q. In that event, let me ask you what, in substance, was related to you by [the Chief of Police] when he appeared at your office and swore to this Affidavit? A. Well, he told me that there were known numbers writers and people coming and going to this particular address, and he had reason to believe that this place was operating and conducting a lottery . . . . Q. Did the Chief indicate that he saw known numbers writers going in? A. Yes, that was his statement to me."

The Chief of Police also testified as to the circumstances surrounding the issuance of the search warrant. "Q. . . . I would like to ask you to tell us what you told the Squire when he was there at the police station so that a warrant might issue in this case? A. I told the

---

[1] Though basing the issuance of a search warrant on oral statements made to a Justice of the Peace may cause later uncertainty as to what was actually said, such a procedure seems to be permitted in Pennsylvania. *Commonwealth v. Crawley*, 209 Pa. Superior Ct. 70, 75-76, 223 A. 2d 885, 888 (1966).

Squire that I have reason to believe that this was a number station, and the Squire asked me why, and I told him that I had information from a reliable source about a week prior to that, and that I myself personally observed what I considered to be numbers writers or players going in and out of the place. . . . Q. . . . Did you bring to the Squire's attention any information regarding the reliability of your informant? A. No, I didn't mention it to the Squire, but I was satisfied."

Based on the information provided by the two depositions, the lower court refused to suppress the evidence obtained pursuant to the warrant. At trial, appellant renewed his objections to the use of the evidence. Appellant was convicted by the court, sitting with a jury, of conducting a lottery. From judgment of sentence, this appeal followed.

In passing on the validity of a search warrant, an appellate court may consider only that information actually conveyed to the issuing authority. *Aguilar v. Texas,* 378 U.S. 108, 109 n.1, 84 S. Ct. 1509, 1511 n.1 (1964); *Giordenello v. United States,* 357 U.S. 480, 486, 78 S. Ct. 1245, 1250 (1958). In this case, the Chief of Police and the Squire testified differently as to what facts were presented to the Justice of the Peace. In my opinion, both descriptions are insufficient to support a finding of probable cause and to justify the issuance of a search warrant.

This Court has repeatedly held that a search warrant may not constitutionally issue unless the affiant presents substantiating facts and circumstances from which the Justice of the Peace "might make an independent and detached appraisal of the probability that a crime had been or was being committed." *Commonwealth v. Swierczewski,* 215 Pa. Superior Ct. 130, 132, 257 A. 2d 336, 337 (1969); *Commonwealth v. Smyser,* 205 Pa. Superior Ct. 599, 211 A. 2d 59 (1965).

It is clear that the allegations that the Chief of Police "had reason to believe that this place was operating and conducting a lottery" and that "known numbers writers and people [were] coming and going to this particular address" provide insufficient substantiation for establishing probable cause for the issuance of a search warrant.

As to the officer's belief that appellant was conducting a lottery, "[u]nder the Fourth Amendment an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. *Mere affirmance or belief or suspicion is not enough." Nathanson v. United States,* 290 U.S. 41, 47, 54 S. Ct. 11 (1933) (emphasis added); *Aguilar v. Texas,* supra; *Commonwealth v. Smyser,* supra. Since all that was presented by the above allegation was a *belief* on the part of the officer, a search warrant could not properly be issued relying on that allegation.

Also, the assertion that people "known to be numbers writers" visited appellant's house[2] provides no substantiating facts upon which the Justice of the Peace could make "an independent and detached appraisal of the probability that a crime had been or was being committed." *Commonwealth v. Smyser,* supra at 604, 211 A. 2d at 62. Certainly, additional allegations are needed before a search warrant could be constitutionally issued. A contrary holding would allow the police to ob-

---

[2] The Squire testified that the Police Chief had referred to "known numbers writers." The Chief's testimony is even weaker: "Q. And you saw, while you were at this distance from the premises, people who you knew were numbers writers? A. No, I didn't say they were number writers; they were alleged number writers—people that you hear rumors about that are number writers; and I did know there was a little more traffic than what is ordinary for a dwelling."

tain a warrant merely on the basis that one "associates" with people believed by the police to be criminals. Surely such "guilt by association" is not a sufficient basis for the issuance of a search warrant under the Fourth Amendment.

In *Spinelli v. United States,* 393 U.S. 410, 414, 89 S. Ct. 584, 588 (1969), the Court stated that "the allegation that Spinelli was 'known' to the affiant and to other federal and local law enforcement officers as a gambler and *an associate of gamblers* is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision [as to whether there was probable cause to issue a search warrant]." (emphasis added). It is submitted that the instant case presents a similar situation.

In addition, the Chief of Police's reference to an informer did not provide the Squire with *any* evidence of "the underlying circumstances" on which the informer based his conclusions as required by *Spinelli v. United States,* supra, and *Aguilar v. Texas,* supra. Also, no evidence was presented which might indicate the informer's credibility. As was the case in *Spinelli,* the issuing authority could not credit the informer's testimony "without abdicating his constitutional function." 393 U.S. at 416, 89 S. Ct. at 589.

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Id.

Insufficient evidence of direct observations and insufficient information concerning the informer were presented to the Justice of Peace. Therefore, the war-

rant should not have been issued. I would suppress the evidence obtained through the use of the unlawful warrant and, thus, reverse the judgment obtained through the use of the evidence and grant a new trial.