## Commonwealth v. Tidmore

*Steven H. Goldblatt,* for Commonwealth.
*George E. Goldstein,* for defendant.
SPAETH, J., April 22, 1971.—

## NATURE AND HISTORY OF THE CASE

Defendant has moved to suppress a quantity of marihuana seized on September 30, 1970. Testimony was received and argument heard on January 19, 1971. By February 17th, a transcript and briefs had been filed.

## THE FACTS

The only evidence is a copy of the search warrant and testimony by the arresting officer.

On September 30, 1970, at about 9 p.m., Officer Victor Beale, of the Philadelphia Police Department, presented the warrant to Judge Marotta, of the Municipal Court. The judge issued the warrant. Since the officer told the judge nothing except the information recited in the warrant, the validity of the warrant must be determined by an examination of the warrant alone.

The probable cause section of the warrant states:

"As a result of information received from a reliable informant whose information in the past has led to eight arrests resulting in five convictions and (3) awaiting trial that the above named person will be arriving at the International Airport on flight # 88 at 9:55 P.M. this date and that he will have in his pos-

session a large quantity of MARIJUANA. As a result of my informant's reliability and accuracy in the past I do believe this information to be true and correct."

The "above named person" was described in the warrant as "Paul Gleason, N/M 5' 10" Dark Complexion Medium Build."

Armed with the warrant, Officer Beale, with Officer Ricks of the Narcotics Unit, went to the airport, where at approximately 10:55 p.m. they met the passengers arriving on Flight 88. Among the passengers was defendant, who matched the informant's description. Officer Beale asked defendant his name, and defendant responded, "Paul Gleason." Defendant was informed of the search warrant and taken to the airport police headquarters, where he was searched, as a result of which Officer Beale found defendant's baggage claim tickets, with which the officer retrieved defendant's two suitcases. In one suitcase he found personal effects and a small scale used "for other purposes relative to narcotic violations." In the other he found 22.9 pounds of marihuana.

## DISCUSSION

When a warrant is sought on the basis of an informant's "tip," the issuing authority must, by an exercise of his independent judgment, be able to make two determinations: first, whether the informant is reliable; and second, whether, from what the informant has said, a search is justified: Spinelli v. United States, 393 U.S. 410, 413 (1969). In the present case, the first of these determinations was possible. The warrant stated that the informant had given information in the past leading to eight arrests, five of which resulted in convictions, with three awaiting trial. Whether the second determination was possible, however, is more difficult to decide.

The invalidity of a warrant that failed to set forth sufficient surrounding circumstances is nowhere better illustrated than in Aguilar v. Texas, 378 U.S. 108 (1964), where the statement of probable cause was as follows:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law". Id. at page 109, footnote omitted.

From this statement, the issuing authority could not independently determine either that the informant was reliable or that his conclusion, that narcotics were at the premises for the purpose of sale, was so likely to be correct as to justify a search. Id. at 113-116.

Another frequently cited illustration of an insufficient warrant appears in Spinelli v. United States, 393 U.S. 410 (1969), where, although the statement of probable cause contained various details of the government's surveillance of defendant, still it was insufficient because the details were as consistent with innocent activities as with unlawful activities (id. at page 414-15) and did not set forth circumstances that enabled the issuing authority to appraise the informant's conclusions (id. at page 416).

The difficulty encountered in informant cases derives from the fact that the officer seeking the issuance of the warrant is necessarily relying upon hearsay. When an officer has himself seen the illegal activity, both of the determinations required by Aguilar and Spinelli may readily be made: the issuing authority may assume, at least usually, that the officer is a reliable witness, and, by considering what the officer says he has seen, may decide whether a search is justi-

fied. When, however, the officer can only tell the issuing authority what an informant has said, the case is different. If the officer says that the informant said, "I saw 22 pounds of marihuana in [defendant's] suitcase," the only question remaining will be whether from past experience the informant may be assumed to be telling the truth. But if the officer does not say how the informant got the information contained in the tip, the issuing authority may not be able to appraise the reliability of the tip.

It might have been held, as a corollary of Aguilar, that a warrant should not be issued unless there is an express statement in the warrant, or otherwise to the issuing authority, of what the informant said regarding his source of information. Such a holding would have been parallel to the requirement that there must be an express statement of why the officer believes the informant may be assumed to be telling the truth. In fact, however, the United States Supreme Court has not gone so far, instead indicating in Spinelli that the warrant may be valid if the issuing authority can, from what the informant said, deduce the nature of the informant's source of information.

In Spinelli, this deduction could not be made. The issuing authority could not determine whether the informant had described what he had seen or only what he had heard, and so the warrant was held invalid. It is plain from the court's reasoning, however, that if the deduction could have been made, the warrant might have been valid. Thus, the court said:

"In the absence of a statement detailing the manner in which the information was gathered, it is specially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial

than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation": Spinelli v. United States, supra, at 416.

It follows from these considerations that the question in the present case is whether the statement in the warrant of what the informant told the officer was sufficient to enable the issuing authority to deduce the nature of the source of the informant's information and so evaluate the reliability of that source. In answering this question, it is necessary to remark upon an ambiguity, or at least an uncertainty, in Spinelli.

Once having decided to permit a deduction of the nature of the informant's source of information, as contrasted to requiring an express identification of that source, the court had to consider how compelling the deduction would have to be, if the warrant were to be upheld. In this consideration, however, the court only had to define the degree of compulsion in negative terms. In the warrant before the court, the deduction could not be made with sufficient compulsion to enable a determination that the informant's source of information was anything more substantial than mere "rumor": Id. at page 416. Thus, the court did not have to consider the issue of how much more than mere rumor would be enough to serve as the basis for issuing a warrant.

It is apparent that this issue could be resolved in at least two ways: the court might require that the warrant say enough to enable a deduction that the informant had seen what he told the officer; or the court might not be so strict, and might leave open the possibility that the warrant might be valid although the informant had relayed to the officer not first-hand but only hearsay information.

Mr. Justice White, in his concurring opinion in

Spinelli, seems to suggest that he would apply the first of these two possible tests. [1] Whether or not this is a correct interpretation of Mr. Justice White's opinion, however, Mr. Justice Harlan, speaking for the court, Mr. Justice White, as noted, concurring, Mr. Justice Black, Mr. Justice Stewart and Mr. Justice Fortas dissenting, and Mr. Justice Marshall not participating, indicates that he would apply the second test. Thus, he states that in evaluating the informant's statement, the facts of Draper v. United States, 358 U.S. 307 (1959), provide a "suitable benchmark":

"While Hereford, the Government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station": Spinelli v. United States, supra, at pages 416-17.

From such detail, Mr. Justice Harlan said, the issuing authority "could reasonably infer that the informant had gained his information in a reliable way": Id. at page 417, footnote omitted.

Upon consideration, this court has concluded to apply Mr. Justice Harlan's test rather than the test suggested by Mr. Justice White's concurring opinion.

---

[1] Said the Justice: "I am inclined to agree with the majority that there are limited special circumstances in which an 'honest' informant's report, if sufficiently detailed, will in effect verify itself . . . Detailed information may sometimes imply that the informant has himself observed the facts": Spinelli v. United States, supra, at page 425.

In no other aspect of the law of search and seizure has the United States Supreme Court insisted upon first-hand information, as distinguished from hearsay, as a necessary basis for a warrant; hence, it seems likely that when the court does have occasion to decide the point, it will adopt the test enunciated by Mr. Justice Harlan.

This conclusion, however, is not dispositive, for the informant's statement in the present case is arguably not so detailed as in Draper v. United States, supra. It is, therefore, necessary to consider what Mr. Justice Harlan meant by his reference to Draper as a "suitable benchmark."

If the justice meant that an informant's statement had to be as detailed as in Draper, the warrant in the present case should perhaps fail, although there is not much less detail in it than the arresting officer had in Draper.[2] This would seem, however, to be a rather mechanical interpretation. A more persuasive interpretation is that the justice was referring, not to the quantity but to the quality of detail, requiring not any particular quantity but rather sufficient quality so that the issuing authority "could reasonably infer that the informant had gained his information in a reliable way": Spinelli v. United States, supra at page 417, footnote omitted. This

---

[2] In Draper, the issue was whether the arresting officer had probable cause to arrest without a warrant, the evidence sought to be suppressed having been seized incident to the arrest. The statement of the information that the officer had, and that the court held was sufficient to show probable cause, differed from the statement in the warrant in the present case principally in that it included a detailed description of Draper's clothing, and also described Draper's luggage, "a tan zipper bag," and mannerisms, he habitually "walked real fast": Draper v. United States, supra, at 309.

interpretation is supported by the fact that in Spinelli the warrant contained, in a sense, more detail than the warrant either in Draper or in the present case, for it described an extensive surveillance, identifying Spinelli's automobile, telephone numbers, and daily movements for five days: Spinelli v. United States, supra, at 420-22. However, since this description was as consistent with innocent activities as with lawful activities, it was held to add nothing to the warrant: Id. at pages 414-15. Thus, the court distinguished between the quantity of detail and the quality.

Applying Mr. Justice Harlan's test as thus understood, this court concludes that the warrant is valid. There are, while not many, still several details in the informant's report of such quality that the issuing authority could reasonably have inferred that the informant had learned what he told the officer in a reliable way: the name and description of defendant (color, height, build); that defendant was arriving in a particular city (Philadelphia), on a particular flight (No. 88), at a particular time (9:55 p.m.); and that defendant would have a large quantity of a particular narcotic (marihuana). These details are not the sort likely to have been learned as the result of hearing a "rumor" or "an accusation based merely on an individual's general reputation," (Spinelli v. United States, supra, at page 416), but rather either by first-hand observation of defendant or by speaking to someone intimately acquainted with defendant.

## ORDER

And now, April 22, 1971, defendant's motion to suppress is denied.