█ · The People of the State of New York, Respondent, v. Lawrence Sullivan, Appellant.— Judgment, Supreme Court, New York County, rendered on August 4, 1969, resentencing defendant *nunc pro tunc* as of September 2, 1964, reversed, on the law and the facts, and vacated, and the order of said court, dated May 14, 1964, denying motion to suppress evidence, reversed, on

the law and the facts, the motion granted, and the case remanded to the trial court for further proceedings not inconsistent with this memorandum opinion. Defendant was convicted after a jury trial of the crime of felonious possession of a narcotic drug with intent to sell (former Penal Law, § 1751). He was sentenced to a term of 10 to 15 years imprisonment. Prior to the trial, defendant moved to suppress the evidence seized. The denial of the suppression motion, after a hearing is the basis of the appeal. The pertinent facts are as follows: Detective Cuomo was in an apartment where an arrest for narcotics had been made. After the arrest, he spoke with a Mr. Ford who was in the apartment but was not arrested. Mr. Ford told the detective that the heroin had been purchased that day from the defendant Sullivan. Ford also said that if he, Ford, called Sullivan at the Hotel Westover, he could find out if he had any more heroin for sale. Ford then made a telephone call. The detective stood next to him. The detective does not recall Ford using the word "heroin" and he did not hear answers to any of Ford's queries or any response to a proposal for a meeting for the purchase of "another load." Actually, the detective only had Ford's word for the fact that he was talking to the defendant in a room at the Hotel Westover. The detective did not check the phone number or residence. The detective had never seen or even heard of Ford before that day. Nor did he know anything about the defendant Sullivan, other than what had been told him by Ford. The phone call was made at about 11:00 P.M. on January 15. At 4:00 A.M. on January 16, the detective, Ford and other officers, without a warrant, went to the Hotel Westover. Ford knocked on the door of Room 1206 and defendant opened the door. The detective identified himself as a police officer, showing his shield. The detective further testified that the defendant made a gesture with his hand and that he said "You got me, come on in," and that he then entered the apartment. The defendant testified that when he opened the door, the police immediately pushed their way into the apartment, and, at the trial, a police captain testified that when the door opened "We pushed our way in there". The detective further testified that upon entering the apartment, he saw a small traveling case on a dresser, in a bedroom. The case was open and contained a quantity of glassine envelopes tied with rubber bands. The envelopes contained a white powder which the detective believed to be heroin. The defendant was then placed under arrest. At the conclusion of the hearing, the motion to suppress was denied. The defendant presently contends that the police lacked probable cause to arrest him and search his premises; that the conduct of the warrantless search was in violation of his constitutional rights. The defendant's argument is well taken, for on the facts of this case the police lacked the necessary probable cause to make the warrantless search. The rule is clear that when an arrest or intrusion into a constitutionally protected premises is based on the accusation of an informer, that the police are under a duty to substantiate the informer's information. The Court of Appeals has held that substantiation "can come either from the informer's own character and reputation or from the separate, objective check of the tale he tells." (*People* v. *Coffey*, 12 N Y 2d 443, 452.) There is no evidence in this record that the informant was "credible" or his information "reliable". The police acted on untested information. (*People* v. *Martin*, 13 N Y 2d 326, 332.) The People argue that the test as to the informant's credibility and reliability of his information was met by the telephone call by Ford to the defendant wherein Ford arranged to buy "another load" and would be "right down" and that further confirmation of this is demonstrated by the defendant opening his door in response to Ford's knock. This argument is without merit. The police officer never heard the defendant's responses during the telephone call, and in truth and fact Ford might well have been talking

to himself or an otherwise complete stranger to the transaction for there was no check with regard to the identity of the person on the other end of the phone. In addition, the defendant was not previously known to the police and was not known to be a trafficker in drugs (cf. *People* v. *Santiago,* 13 N Y 2d 326). The People rely heavily on the case of *People* v. *Montague* (19 N Y 2d 121, cert. den. 389 U. S. 862) wherein it is claimed the standard for determining the veracity and credibility of an informant is set forth. The facts in that case, however, have no application to the case at bar. There a warrant had been obtained from a neutral Magistrate on a showing of proper cause which is unlike the warrantless search here. The court in that case, at page 124, stated: "The chief circumstance tending to support the Police Justice's determination that probable cause existed for the issuance of the warrant is the fact that Sergeant Taubenkraut did not apply for a warrant until he had verified the reliability of his informant by having the latter undertake to contact the suspects and effect a purchase of marihuana from them. Acting with commendable restraint, the police officer did not apply for the warrant until he had a sample of the contraband in hand and had learned of an impending transfer of additional marihuana planned for the night of September 30. The investigation * * * into the defendant's narcotic activities, which investigation took 19 days, is described in detail in his affidavit, and the full particulars of this investigation, as revealed in the affidavit, support the inference that the informant was both credible and reliable." The facts here have no relationship to the above-cited case where proper police investigation was used. The police knew nothing concerning this defendant except as told by Ford and, admittedly, they knew nothing about Ford. Nor did they make any effort to corroborate his story. A warrantless search predicated upon this information falls far short of the requirement as set forth in *Draper* v. *United States* (358 U. S. 307, 313). In that case, as here, the question involved was whether the police had probable cause for an arrest without a warrant. In that case, however, the information supplied by the informer "had always been found accurate and reliable" and, in addition, "every facet of the information given by [the informer was] * * * personally verified" by the police. (See, also, *Aquilar* v. *Texas,* 378 U. S. 108.) The law on occasion benefits persons who may be engaged in criminal activity. However, the safeguards of our constitutional system are available to all and, as a court, we are mandated to interpret the law and uphold it without regard to the personalities involved. Accordingly, under the circumstances, the order denying the suppression herein should be reversed, on the law and on the facts, the judgment of resentence rendered upon a conviction vacated, and the matter remitted to the trial court for further proceedings not inconsistent with this memorandum. Concur — Nunez, J. P., Murphy and Eager, JJ.; Kupferman and Steuer, JJ., dissent in the following memorandum by Steuer, J.: We would affirm the judgment of Trial Term. Reversal of the judgment is predicated upon reversing the denial of the motion to suppress the evidence consisting of a large quantity of heroin seized at the arrest of the defendant. This ruling is in turn based upon the finding that the arresting officers acted without probable cause. It appears without substantial dispute that in the evening of January 15, 1964, the police made an arrest on a narcotics charge in an apartment in The Bronx. There were several people in the apartment, including a man named Ford. Ford had not been arrested but he volunteered the information to the police that he knew that the heroin then seized in the apartment was purchased from the defendant, and while not admitting any connection with that specific purchase he admitted prior purchases from the defendant. He further offered to contact the defendant by telephone forthwith and arrange to make a purchase. He was directed to do

so and, in the presence of a detective, made a telephone connection. While the detective could not hear the recipient's part of the conversation, the purport of what Ford said was first an inquiry as to whether the defendant had any heroin on hand, and then an arrangement for Ford to call at once at the defendant's residence and make a purchase. Detectives went with Ford to the Hotel Westover on West 72nd Street. Ford took them to an apartment in that hotel, knocked on the door, and the defendant opened it. The police entered the apartment, saw a considerable supply of processed heroin (some 1,450 glassine envelopes and an ounce of undiluted heroin) and arrested the defendant. It is true that prior to this incident the arresting officers did not know Ford and could have had no opinion as to his reliability. By his own admission he was involved in the narcotics trade and he must have had some source of supply. The telephone call made in the presence of the detective was some corroboration that defendant was that source. While the detective could not hear the receiving party's end of the conversation, he could and did hear enough to determine that there was an actual telephone connection. Although it is indisputable that he could not testify as to what Sullivan said, it is equally true that, unless Ford was engaged in an elaborate hoax, an appointment was made for a specific time, at a specific place and for a specific purpose. There was no reasonable ground for doubting that the call was other than it purported to be. And as such, together with the circumstances under which the call was made, it substantiated Ford's information and provided probable cause. In *People* v. *Montague* (19 N Y 2d 121) a set of facts quite similar to this case was presented. The police officer had no information as to the reliability of the informer but, as here, the informer was himself a participant in the narcotics trade. There, he showed the officer marijuana he allegedly had purchased; here, the officer was told the seized narcotics had been so purchased. There, the defendant told the officer of his arrangement to make a further purchase; here, he purportedly made that arrangement in the officer's presence. There, as here, the defendant gave the officer information as to his proposed method of purchase, which information was not further investigated. It is undeniable that the telephone call, whatever its deficiencies as to certainty may be, is at least stronger than the mere statement of the informer that contact with the vendor had been made. In *Montague* it was held that without any further proof the Magistrate had probable cause for the issuance of a warrant. There is no distinction in the probable cause to issue a warrant and to make an arrest, although there are distinctions in other respects. A question has also been raised as to the legality of the arrest on other grounds. Here the determination was on a factual basis, and on the facts as found by the court no question is presented. It is most discouraging to witness the release of a wholesale dealer in the drugs poisoning a large sector of the community upon what is, at best, a hypertechnical view of the law and, at worst, what we believe a mistaken view of the defendant's rights. The safeguards of our system unfortunately make it difficult to apprehend and convict one who, like this defendant, occupies a place in the drug traffic a step away from the ultimate consumer. While he is entitled to the protection of those safeguards, there appears to be no good reason why they should be extended by interpretation far beyond their salutary purposes for his benefit. The conviction should be affirmed.