MATTER OF PEREZ-LOPEZ

In Deportation Proceedings

A–19171027
A–19171025

*Decided by Board March 8, 1972*

An anonymous letter, received after the termination of deportation proceedings because of tainted evidence, which resulted in a reopened hearing with the introduction of additional evidence leading to deportability, was a lead clear and independent of any taint, and the deportation of respondents was ordered on the basis of the new evidence.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer (both).

ON BEHALF OF RESPONDENTS:　Lloyd E. McMurray, Esquire
228 McAllister Street
San Francisco, California 94102
(Brief filed)

At a reopened hearing, the special inquiry officer ordered respondents deported. He certified this order to the Board. The issue is whether the evidence used against respondents is free of taint. We find it is and, therefore, will make no change in his order.

The special inquiry officer originally terminated deportation proceedings on the ground that the Service's case against respondents was based on evidence that was the "fruit of the poisonous tree." He found that a Service on-the-street questioning of respondents resulted in their legal arrest, that the Service subsequently made an illegal search and seizure of documents in respondents' living quarters, that these documents were used as leads to obtain evidence from the Service and State Department files, and that this evidence was presented by the Service at the deportation hearing to establish that respondents were Mexican aliens who had entered for a temporary period and had remained without authority. The special inquiry officer concluded that this evidence was tainted and could not be used to establish deportability. The special inquiry officer also held that respondents' admis-

sions against interest made after their arrest could not be used to establish deportability because the admissions were obtained after respondents' detention had become unlawful because of the Service's failure to follow its own regulations, 8 CFR 287.3. The facts are stated in detail in the special inquiry officer's comprehensive order of March 8, 1971.

After the special inquiry officer terminated the proceedings, the Service received an anonymous letter stating that the respondents, who are brothers, are aliens illegally in the United States; that they had brought their mother and also the family of one respondent (wife and minor children) here; that they all lived at a certain address and that the respondents were working in the United States. The Service obtained a reopening of the deportation proceedings from the special inquiry officer. At the reopened hearing there was introduced in evidence the anonymous letter and statements taken by a Service investigator from the adult females named in the letter; the Service officer and the adult females testified. The special inquiry officer ruled that the Service had established its case by untainted evidence. He entered the order of deportation which is now before us. The special inquiry officer held that the letter would have led the Service to question respondents' adult relatives named in the letter and that such examination would have ultimately put the Service in possession of the same evidence from its files and those of the State Department that it had tried to use against respondents at the original deportation proceeding. Such evidence, free of taint, supported an order of deportation.

Counsel concedes that the questioning of the mother and the wife named in the anonymous letter would have revealed that the respondents were illegally in the United States (counsel's brief, p. 2). However, he contends that since it was the anonymous letter that led the Service to these witnesses, the Service must show that the anonymous letter was itself clear of taint, and to do this, the Service must show that the writer of the anonymous letter (the informer) had made a factual statement and that his statement was based on personal knowledge. In short, counsel would apply here, the "probable cause" test used in determining when an informer's statement may properly be the basis for the issuance of a search warrant, *Aguilar* v. *Texas*, 378 U.S. 108 (1964).

We must reject counsel's contention. The test as to the admissibility of evidence offered by the Government in a case where it has obtained evidence unlawfully is well settled. It is not the rule advanced by counsel. It is that the Government has the burden of establishing that it gained or could have gained the knowledge it relies upon from a source independent of its wrongful act, *Wong*

80

*Sun* v. *United States*, 371 U.S. 471, 485 (1963). Applying this test and assuming arguendo, that the special inquiry officer's termination order was correct for the reasons he gave, we find that the anonymous letter was a lead independent of any taint, that it warranted Service inquiry and that the evidence which would have resulted from it would have established respondents' deportability.

We must reject counsel's attempt to equate an anonymous letter to the Service which became the basis for an investigation, with an informer's tip to the police which became the basis for the issuance of a warrant in a criminal case. There is a material difference between considerations which justify a Service investigation based upon an anonymous letter and the considerations in criminal cases which require a showing of probable cause before a warrant may be issued on an informer's tip. The immigration laws specifically provide that an investigation may be undertaken without the issuance of a warrant (as long as there is no unconstitutional invasion of privacy), section 287(a)(1) of the Act, 8 U.S.C. 1357(a)(1). See section 235 of the Act, 8 U.S.C. 1225. An immigration investigation can be initiated without independent evidence of a violation of the immigration laws, *United States* v. *Montez-Hernandez*, 291 F. Supp. 712 (E.D. Cal., 1968). See *Laqui* v. *INS*, 422 F.2d 807 (C.A. 7, 1970). See also *United States* v. *Minker*, 350 U.S. 179 (1956).

There is nothing in this record which would indicate that the anonymous letter was inspired by the Service. We reject the notion that an alien illegally in the United States who is now found deportable on untainted evidence can achieve what is tantamount to permanent residence merely because the Service at one time may have acted illegally in assembling evidence of his deportability.

In view of the action we now take, it is unnecessary to discuss the special inquiry officer's order of March 8, 1971 terminating proceedings.

**ORDER:** No change is made in the special inquiry officer's order.