STATE of Tennessee, Appellee,

v.

Johnny Lee WEBB, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

April 8, 1982.

George Morton Googe, Jackson, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, George Hymers, Dist. Atty. Gen., Jerry Woodall, Asst. Dist. Atty. Gen., Jackson, for appellee.

## OPINION

DWYER, Judge.

This is a conviction for concealing stolen property over the value of $200, T.C.A. § 39–4217, with confinement for not less than nor more than three years.

These are the issues: (1) the evidence was insufficient to support the defendant's conviction; (2) the court should have suppressed the evidence obtained in the unlawful search of defendant's premises; (3) the State acted improperly to defendant's prejudice in not disclosing the identity of the informant, and the court should have ordered the identity of the informant divulged; (4) the court erred in allowing Officer Montgomery to testify as a rebuttal witness regarding the identity of the informant and what the informant told him regarding a conversation of the defendant and others which the informant allegedly overheard; (5) the court erred in failing to grant a mistrial or give curative instructions when the District Attorney General, over defense objections, said in closing argument that the "kicker" was the officer's conversation with the informant; and (6) the court should have granted the motion to suppress and granted the defendant a new trial based on newly discovered evidence that the informant was a convicted felon.

In order to evaluate the issues we will narrate the evidence as found from our review of this record.

On February 16 or 17, 1980, a Mr. Chester Sikes' home at 729 E. Chester in Jackson, Tennessee, was burglarized during the afternoon hours. Mr. Sikes listed assorted clothing, bedspreads, binoculars, hand gun, bottles of cologne, a 19-inch television, a stereo tape deck, and a canned ham to the police as being unlawfully taken from his home. He placed a value of over $1,000 on his chattels.

On the early morning hours of February 22, 1980, an Officer Montgomery of the Jackson Police Department while on duty was approached by a male and female black couple who gave him information about stolen property being located in the appellant's home.

The officer made a list of the items as given to him by the informant. He then went to the station house and checked the burglary files and found the items described matched the complaint of Mr. Sikes.

The officer then obtained a search warrant based on the information that he had received. With the warrant he went to 707 E. Lafayette, the home of the appellant. When his knock on the door went unanswered he forced the door. The appellant was found hiding behind a couch. A search of the premises uncovered most of the property that had been taken from Mr. Sikes' home.

A Mr. and Mrs. Harris Scott, testifying as defense witnesses, related they lived in the other side of the house with appellant. In substance, both related that a Ronnie Moore had knocked on the door one afternoon and asked for the appellant. When Moore was told appellant was not there he asked if he could leave his stuff there. Anita Butler, appellant's girl friend, told Moore that he could leave the things there.

The attorney general, cross examining Harris Scott, brought a denial that he had told Officer Montgomery he overheard Moore tell appellant the merchandise was stolen.

Anita Butler corroborated in substance Scott's testimony that this had occurred a week prior to the police searching the house and that the appellant thought he was storing goods that belonged to a friend of his, Mr. Moore.

The appellant related that when he returned to his home he saw the merchandise on his premises; that he was told by Anita Butler that Moore had been by and had left it; that he did not like it but had placed it out of the way to keep anyone from messing with it; that he had plugged in the television and was using it; that the reason he hid behind the couch was that he thought police were after him about another unrelated matter. In short, although the property was on his premises, he contends that he did not put it there and did not know that it was stolen.

In rebuttal, the State recalled Officer Montgomery who, over objection, testified Mr. Scott was the informant who told him he overheard the unknown man tell the appellant that the merchandise was stolen.

■ The first issue: He contends the court erred in overruling the trial motion to suppress. It is his argument that the search warrant was defective in that the reliability of the informant was not established, with reliance on *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). With the officer testifying that he had known the informant for a month, that he checked on informant's employment and that he had lived in Jackson several years, and, most importantly, that he made a list of the items described by the informant and then checked police records, which revealed items of that description had been taken in a recent burglary, the reliability of the informant was established. *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964). This issue is overruled.

■ The second issue: With a valid search warrant and the recovery of Mr. Sikes' recently stolen goods on the premises of the appellant, coupled with his hiding to evade the officers, the evidence is overwhelmingly sufficient to support the verdict. T.R.A.P. 13(e). This issue is overruled.

■ The third issue: With Harris Scott being a witness to the transaction, the court erred in not ordering his identity as the informant to be revealed at the suppression hearing. That, however, does not end the matter. With Harris Scott revealed as the informant through the cross examination by the State's attorney, and testifying as a witness for the appellant, the error did not affect the results. This issue is overruled.

■ The fourth issue: It was proper rebuttal to allow the State to recall Officer Montgomery and impeach Harris Scott's denial that he had told the officer he had heard someone tell appellant the property was stolen. *Paine, Tennessee Law of Evidence*, §§ 191, 193, pp. 213–218. There is no error here.

■ The fifth issue: We feel that any error in the attorney general's closing argument did not affect the results. T.R.A.P. 36(b). The trial court instructed the jury both during Officer Montgomery's rebuttal testimony and during the court's charge to the jury that impeachment testimony was to be considered only as to its effect on the credibility of the witness and not as to the guilt or innocence of the appellant. The issue is overruled.

■ The sixth issue: The appellant, while the jury was deliberating, informed counsel that Harris Scott "had been up here before." A check had been made by appellant of the records in the Madison County Sheriff's Office and the Madison County Circuit Court Clerk's Office which revealed a prior felony conviction of Scott. He contends this prior conviction would impeach Officer Montgomery's testimony that he had checked and found no prior record of Scott; therefore, a new trial should be granted with reliance on *State v. Little*, 560 S.W.2d 403 (Tenn.1978). In the first instance, the officer did not testify that he had checked before obtaining the search warrant and found out Harris had no prior record. It is true the attorney general argued this was so, but the official's statements are not evidence, therefore, *State v. Little, supra*, is not applicable here in these quarters. In the second instance, appellant's discovery of the prior criminal record of his witness, Harris Scott, is not newly discovered evidence. This issue is overruled.

The judgment of the trial court is affirmed.

O'BRIEN and TATUM, JJ., concur.