## AGUILAR *v.* TEXAS.

No. 548.   Argued March 25–26, 1964.—
Decided June 15, 1964.

*Clyde W. Woody* argued the cause and filed a brief for petitioner.

*Carl E. F. Dally* argued the cause for respondent. With him on the brief were *Waggoner Carr,* Attorney General of Texas, and *Gilbert J. Pena,* Assistant Attorney General.

Mr. Justice Goldberg delivered the opinion of the Court.

This case presents questions concerning the constitutional requirements for obtaining a state search warrant.

Two Houston police officers applied to a local Justice of the Peace for a warrant to search for narcotics in petitioner's home. In support of their application, the officers submitted an affidavit which, in relevant part, recited that:

> "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." [1]

The search warrant was issued.

In executing the warrant, the local police, along with federal officers, announced at petitioner's door that they

---

[1] The record does not reveal, nor is it claimed, that any other information was brought to the attention of the Justice of the Peace. It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention. *Giordenello* v. *United States,* 357 U. S. 480, 486; 79 C. J. S. 872 (collecting cases). In *Giordenello,* the Government pointed out that the officer who obtained the warrant "had kept petitioner under surveillance for about one month prior to the arrest." The Court of course ignored this evidence, since it had not been brought to the magistrate's attention. The fact that the police may have kept petitioner's house under surveillance is thus completely irrelevant in this case, for, in applying for the warrant, the police did not mention any surveillance. Moreover, there is no evidence in the record that a surveillance was actually set up on petitioner's house. Officer Strickland merely testified that "we *wanted to* set up surveillance on the house." If the fact and results of such a surveillance had been appropriately presented to the magistrate, this would, of course, present an entirely different case.

were police with a warrant. Upon hearing a commotion within the house, the officers forced their way into the house and seized petitioner in the act of attempting to dispose of a packet of narcotics.

At his trial in the state court, petitioner, through his attorney, objected to the introduction of evidence obtained as a result of the execution of the warrant. The objections were overruled and the evidence admitted. Petitioner was convicted of illegal possession of heroin and sentenced to serve 20 years in the state penitentiary.[2] On appeal to the Texas Court of Criminal Appeals, the conviction was affirmed, 172 Tex. Cr. R. 629, 362 S. W. 2d 111, affirmance upheld on rehearing, 172 Tex. Cr. R. 631, 362 S. W. 2d 112. We granted a writ of certiorari to consider the important constitutional questions involved. 375 U. S. 812.

In *Ker* v. *California,* 374 U. S. 23, we held that the Fourth "Amendment's proscriptions are enforced against the States through the Fourteenth Amendment," and that "the standard of reasonableness is the same under the Fourth and Fourteenth Amendments." *Id.,* at 33. Although *Ker* involved a search without a warrant, that case must certainly be read as holding that the standard for obtaining a search warrant is likewise "the same under the Fourth and Fourteenth Amendments."

An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action

---

[2] Petitioner was also indicted on charges of conspiring to violate the federal narcotics laws, Act of February 9, 1909, c. 100, 35 Stat. 614, § 2, as amended, 21 U. S. C. § 174; Internal Revenue Code of 1954, § 7237 (b), as amended, 26 U. S. C. § 7237 (b). He was found not guilty by the jury. His codefendants were found guilty and their convictions affirmed on appeal. *Garcia* v. *United States,* 315 F. 2d 679.

of officers . . . who may happen to make arrests."
*United States* v. *Lefkowitz,* 285 U. S. 452, 464.   The rea-
sons for this rule go to the foundations of the Fourth
Amendment.   A contrary rule "that evidence sufficient
to support a magistrate's disinterested determination to
issue a search warrant will justify the officers in making
a search without a warrant would reduce the Amendment
to a nullity and leave the people's homes secure only in the
discretion of police officers."   *Johnson* v. *United States,*
333 U. S. 10, 14.   Under such a rule "resort to [warrants]
would ultimately be discouraged."   *Jones* v. *United
States,* 362 U. S. 257, 270.   Thus, when a search is based
upon a magistrate's, rather than a police officer's, deter-
mination of probable cause, the reviewing courts will
accept evidence of a less "judicially competent or per-
suasive character than would have justified an officer in
acting on his own without a warrant," *ibid.,* and will sus-
tain the judicial determination so long as "there was sub-
stantial basis for [the magistrate] to conclude that nar-
cotics were probably present . . . ."   *Id.,* at 271.   As so
well stated by Mr. Justice Jackson:

> "The point of the Fourth Amendment, which often
> is not grasped by zealous officers, is not that it denies
> law enforcement the support of the usual inferences
> which reasonable men draw from evidence.   Its pro-
> tection consists in requiring that those inferences be
> drawn by a neutral and detached magistrate instead
> of being judged by the officer engaged in the often
> competitive enterprise of ferreting out crime."
> *Johnson* v. *United States, supra,* at 13–14.

Although the reviewing court will pay substantial defer-
ence to judicial determinations of probable cause, the
court must still insist that the magistrate perform his
"neutral and detached" function and not serve merely
as a rubber stamp for the police.

In *Nathanson* v. *United States,* 290 U. S. 41, a warrant was issued upon the sworn allegation that the affiant "has cause to suspect and does believe" that certain merchandise was in a specified location. *Id.,* at 44. The Court, noting that the affidavit "went upon a mere affirmation of suspicion and belief *without any statement of adequate supporting facts," id.,* at 46 (emphasis added), announced the following rule:

> "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from *facts or circumstances* presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not enough." *Id.,* at 47. (Emphasis added.)

The Court, in *Giordenello* v. *United States,* 357 U. S. 480, applied this rule to an affidavit similar to that relied upon here.[3] Affiant in that case swore that petitioner "did receive, conceal, etc., narcotic drugs . . . with knowledge of unlawful importation . . . ." *Id.,* at 481. The Court announced the guiding principles to be:

> "that the inferences from the facts which lead to the complaint '[must] be drawn by a neutral and de-

---

[3] In *Giordenello,* although this Court construed the requirement of "probable cause" contained in Rule 4 of the Federal Rules of Criminal Procedure, it did so "in light of the constitutional" requirement of probable cause which that Rule implements. *Id.,* at 485. The case also involved an arrest warrant rather than a search warrant, but the Court said: "The language of the Fourth Amendment, that '. . . no Warrants shall issue, but upon probable cause . . .' of course applies to arrest as well as search warrants." *Id.,* at 485–486. See *Ex parte Burford,* 3 Cranch 448; *McGrain* v. *Daugherty,* 273 U. S. 135, 154–157. The principles announced in *Giordenello* derived, therefore, from the Fourth Amendment, and not from our supervisory power. Compare *Jencks* v. *United States,* 353 U. S. 657. Accordingly, under *Ker* v. *California,* 374 U. S. 23, they may properly guide our determination of "probable cause" under the Fourteenth Amendment.

tached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' *Johnson* v. *United States,* 333 U. S. 10, 14. The purpose of the complaint, then, is to enable the appropriate magistrate . . . to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion . . . ." 357 U. S., at 486.

The Court, applying these principles to the complaint in that case, stated that:

"it is clear that it does not pass muster because it does not provide any basis for the Commissioner's determination . . . that probable cause existed. The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made." *Ibid.*

The vice in the present affidavit is at least as great as in *Nathanson* and *Giordenello.* Here the "mere conclusion" that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only "contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein," it does not even contain an "affirmative allegation" that the affiant's unidentified source "spoke with personal knowledge." For all that appears, the source here merely suspected, believed or concluded that there were narcotics in peti-

tioner's possession.[4]   The magistrate here certainly could
not "judge for himself the persuasiveness of the facts re-
lied on . . . to show probable cause."   He necessarily
accepted "without question" the informant's "suspicion,"
"belief" or "mere conclusion."

Although an affidavit may be based on hearsay infor-
mation and need not reflect the direct personal observa-
tions of the affiant, *Jones* v. *United States,* 362 U. S. 257,
the magistrate must be informed of some of the under-
lying circumstances from which the informant concluded
that the narcotics were where he claimed they were, and
some of the underlying circumstances from which the
officer concluded that the informant, whose identity need
not be disclosed, see *Rugendorf* v. *United States,* 376 U. S.
528, was "credible"or his information "reliable." [5]   Other-

---

[4] To approve this affidavit would open the door to easy circum-
vention of the rule announced in *Nathanson* and *Giordenello.*   A
police officer who arrived at the "suspicion," "belief" or "mere con-
clusion" that narcotics were in someone's possession could not obtain
a warrant.   But he could convey this conclusion to another police
officer, who could then secure the warrant by swearing that he had
"received reliable information from a credible person" that the nar-
cotics were in someone's possession.

[5] Such an affidavit was sustained by this Court in *Jones* v. *United
States,* 362 U. S. 257.   The affidavit in that case reads as follows:

"Affidavit in Support of a U. S. Commissioners Search Warrant
for Premises 1436 Meridian Place, N. W., Washington, D. C., apart-
ment 36, including window spaces of said apartment.   Occupied by
Cecil Jones and Earline Richardson.

"In the late afternoon of Tuesday, August 20, 1957, I, Detective
Thomas Didone, Jr. received information that Cecil Jones and Earline
Richardson were involved in the illicit narcotic traffic and that they
kept a ready supply of heroin on hand in the above mentioned apart-
ment.   The source of information also relates that the two afore-
mentioned persons kept these same narcotics either on their person,
under a pillow, on a dresser or on a window ledge in said apartment.
The source of information goes on to relate that on many occasions
the source of information has gone to said apartment and purchased
narcotic drugs from the above mentioned persons and that the nar-

wise, "the inferences from the facts which lead to the complaint" will be drawn not "by a neutral and detached magistrate," as the Constitution requires, but instead, by a police officer "engaged in the often competitive enterprise of ferreting out crime," *Giordenello* v. *United States, supra,* at 486; *Johnson* v. *United States, supra,* at 14, or, as in this case, by an unidentified informant.

We conclude, therefore, that the search warrant should not have been issued because the affidavit did not provide a sufficient basis for a finding of probable cause and that

---

cotics were secreated [*sic*] in the above mentioned places. The last time being August 20, 1957.

"Both the aforementioned persons are familiar to the undersigned and other members of the Narcotic Squad. Both have admitted to the use of narcotic drugs and display needle marks as evidence of same.

"This same information, regarding the illicit narcotic traffic, conducted by Cecil Jones and Earline Richardson, has been given to the undersigned and to other officers of the narcotic squad by other sources of information.

"Because the source of information mentioned in the opening paragraph has given information to the undersigned on previous occasion and which was correct, and because this same information is given by other sources does believe that there is now illicit narcotic drugs being secreated [*sic*] in the above apartment by Cecil Jones and Earline Richardson.

"Det. Thomas Didone, Jr., Narcotic Squad, MPDC.
"Subscribed and sworn to before me this 21 day of August, 1957.

"James F. Splain, U. S. Commissioner, D. C." *Id.,* at 267–268, n. 2.

Compare, *e. g., Hernandez* v. *People,* —— Colo. ——, 385 P. 2d 996, where the Supreme Court of Colorado, accepting a confession of error by the State Attorney General, held that a search warrant similar to the one here in issue violated the Fourth Amendment. The court said:

"Before the issuing magistrate can properly perform his official function he must be apprised of the underlying facts and circumstances which show that there is probable cause . . . ." *Id.,* at ——, 385 P. 2d, at 999.

the evidence obtained as a result of the search warrant was inadmissible in petitioner's trial.

The judgment of the Texas Court of Criminal Appeals is reversed and the case remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE HARLAN, concurring.

But for *Ker* v. *California,* 374 U. S. 23, I would have voted to affirm the judgment of the Texas court. Given *Ker,* I cannot escape the conclusion that to do so would tend to "relax Fourth Amendment standards . . . in derogation of law enforcement standards in the *federal* system . . ." (my concurring opinion in *Ker, supra,* at 45–46, emphasis added). Contrary to what is suggested in the dissenting opinion of my Brother CLARK in the present case (*post,* p. 118, note 1), the standards laid down in *Giordenello* v. *United States,* 357 U. S. 480, did in my view reflect constitutional requirements. Being unwilling to relax those standards for federal prosecutions, I concur in the opinion of the Court.

MR. JUSTICE CLARK, whom MR. JUSTICE BLACK and MR. JUSTICE STEWART join, dissenting.

First, it is well to point out the information upon which the search warrant in question was based: About January 1, 1960, Officers Strickland and Rogers from the narcotics division of the Houston Police Department received reliable information from a credible person that petitioner Aguilar had heroin and other narcotic drugs and narcotic paraphernalia in his possession at his residence, 509 Pinckney Street, Houston, Texas; after receiving this information the officers, the record indicates, kept the premises of petitioner under surveillance for about a week.

On January 8, 1960, the two officers applied for a search warrant and executed an affidavit before a justice

of the peace in which they alleged under oath that petitioner's residence at 509 Pinckney Street "is a place where we each have reason to believe and do believe that [Aguilar] . . . has in his possession therein narcotic drugs . . . for the purpose of the unlawful sale thereof, and where such narcotic drugs are unlawfully sold." In addition and in support of their belief, the officers included in the affidavit the further allegation that they "have received reliable information from a credible person and do believe that heroin . . . and other narcotics and narcotic paraphernalia are being kept at . . . [petitioner's] premises for the purpose of sale and use contrary to the provisions of the law."

Upon executing the warrant issued on the strength of this affidavit, the officers knocked on the door of Aguilar's house. Someone inside asked who was there and the officers replied that they were police and that they had a search warrant. At this they heard someone "scuffle and start to run inside of the house." The officers entered and pursued the petitioner, who ran into a back bathroom. Petitioner threw a packet of heroin into the commode, but an officer retrieved the packet before it could be flushed down the drain.

## I.

At trial petitioner objected to the introduction into evidence of the heroin obtained through execution of the search warrant on the ground that the affidavit was "nothing more than hearsay." The Court holds the affidavit insufficient and sets aside the conviction on the basis of two cases, neither of which is controlling.

First is *Nathanson* v. *United States*, 290 U. S . 41 (1933). In that case the affidavit stated that the affiant had "cause to suspect and [did] believe that certain merchandise" was in the premises described. There was nothing in *Nathanson*, either in the affidavit or in the other proof introduced at trial, to suggest that any facts

had been brought out to support a reasonable belief or even a suspicion. Accordingly, the Court held that "[m]ere affirmance of belief or suspicion is not enough." At 47. But in Fourth Amendment cases findings of reasonableness or of probable cause necessarily rest on the facts and circumstances of each particular case. In *Aguilar,* the affidavit was based not only on "affirmance of belief" but in addition upon *"reliable information from a credible person"* plus a week's surveillance by the affiants. (Emphasis supplied.) *Nathanson* is, therefore, *not* apposite.

The second case the Court relies on is *Giordenello* v. *United States,* 357 U. S. 480 (1958). There the affidavit alleged that "Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrochloride with knowledge of unlawful importation . . . ." The opinion of the Court, by MR. JUSTICE HARLAN, after discussing Rules 3 and 4 of the Federal Rules of Criminal Procedure, held that the defect in the complaint was that it "does not provide any basis for the Commissioner's determination under Rule 4 that probable cause existed." At 486. The dissent in the case, in commenting on the Court's holding that the complaint was invalid, said: "The Court does not strike down this complaint directly on the Fourth Amendment, but merely on an extension of Rule 4." At 491. Since *Giordenello* was a federal case, decided under our supervisory powers (Rules 3 and 4 of the Federal Rules of Criminal Procedure), it does not control here.[1] As we said in *Ker* v. *California,* 374 U. S. 23, 33 (1963), "the demands of our federal system compel us to distinguish between evidence held inadmissible because of our supervisory powers over federal courts and

---

[1] MR. JUSTICE BLACK, who joined the Court's opinion in *Giordenello,* joins this dissent on the basis of his belief that *Giordenello* was based on Rule 4 and not on the less exacting requirements of the Fourth Amendment.

that held inadmissible because prohibited by the United States Constitution."

Even if *Giordenello* was rested on the Constitution, it would not be controlling here because of the significant differences in the facts of the two cases. In *Giordenello* the Court said: "The complaint . . . does not indicate any sources for the complainant's belief; and it does not set forth any *other* sufficient basis upon which a finding of probable cause could be made." 357 U. S., at 486. (Emphasis supplied.) Here, in Aguilar's case, the affidavit did allege a source for the complainant's belief, *i. e.,* "reliable information from a credible person . . . that heroin . . . and other narcotics . . . are being kept" in petitioner's premises "for the purpose of sale and use contrary to the provisions of the law." This takes the affidavit here entirely outside the *Giordenello* holding. In *Giordenello* no source of information was stated, whereas here there was a reliable one. The affidavit thus shows "probable cause" within the meaning of the Fourth Amendment, as that Amendment was interpreted by this Court in *Draper* v. *United States,* 358 U. S. 307 (1959), where it was contended that the information given by an informant to an officer was inadmissible because it was hearsay. The Court in *Draper* held that petitioner was "entirely in error. *Brinegar* v. *United States* . . . has settled the question the other way." At 311. In the following year this was reaffirmed in *Jones* v. *United States,* 362 U. S. 257, 271 (1960): "We conclude therefore that hearsay may be the basis for a warrant." [2]

---

[2] The affidavit in *Jones* was more detailed, including a statement of where the heroin might be found, *viz.,* "on their person, under a pillow, on a dresser or on a window ledge in said apartment." But this detail adds nothing to the reliability of the information furnished. Likewise, the allegation in *Jones* that the informer had "on previous occasion" given information "which was correct" was contained in substance in the *Aguilar* affidavit.

Furthermore, in the case of *Rugendorf* v. *United States,* decided only this Term, we held an affidavit good based on information that an informer had seen certain furs in Rugendorf's basement. 376 U. S. 528. In the *Aguilar* affidavit the informer told the officers that narcotics were actually "kept at the above described premises for the purpose of sale . . . ." The Court seems to hold that what the informer says is the test of his reliability. I submit that this has nothing to do with it. The officer's experience with the informer is the test and here the two officers swore that the informer was credible and the information reliable. At the hearing on the motion to supress Officer Strickland testified that he delayed getting the search warrant for a week in order to "set up surveillance on the house." The informant's statement, Officer Strickland said, was "the first information" received and was only "some of" that which supported the application for the warrant. The totality of the circumstances upon which the officer relied is certainly pertinent to the validity of the warrant. See the use of such testimony in *Giordenello, supra,* at 485, 486. And, just as in that case, there is nothing in the record here to show what the officers verbally told the magistrate. The surveillance of Aguilar's house, which is confirmed by the State's brief, apparently gave the officers further evidence upon which they based their personal belief. Hence the affidavit here is a far cry from "suspicion" or "affirmance of belief." It was based on reliable information from a credible informant plus personal surveillance by the officers.

Furthermore, the Courts of Appeals have often approved affidavits similar to the one here. See, *e. g., United States* v. *Eisner,* 297 F. 2d 595 (C. A. 6th Cir.); *Evans* v. *United States,* 242 F. 2d 534 (C. A. 6th Cir.); *United States* v. *Ramirez,* 279 F. 2d 712, 715 (C. A. 2d Cir.) (dictum); and *United States* v. *Meeks,* 313 F. 2d 464

(C. A. 6th Cir.). We denied certiorari in *Eisner,* 369 U. S. 859, although the affidavit there stated only that "[i]nformation has been obtained by S. A. Clifford Anderson . . . which he believes to be reliable . . . ," 297 F. 2d, at 596, and in *Evans,* 353 U. S. 976, where the affiant was a man who "came to the headquarters of the federal liquor law enforcement officers and stated that he wished to give information . . . ," 242 F. 2d, at 535.

In summary, the information must be more than mere wholly unsupported suspicion but less than "would justify condemnation," as Chief Justice Marshall said in *Locke* v. *United States,* 7 Cranch 339, 348 (1813). As Chief Justice Taft said in *Carroll* v. *United States,* 267 U. S. 132, 162 (1925): Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] . . . sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. And as Mr. Justice Rutledge so well stated in *Brinegar* v. *United States,* 338 U. S. 160, 176 (1949):

> "These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.

> Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

Believing that the Court has substituted a rigid, academic formula for the unrigid standards of reasonableness and "probable cause" laid down by the Fourth Amendment itself—a substitution of technicality for practicality—and believing that the Court's holding will tend to obstruct the administration of criminal justice throughout the country, I respectfully dissent.