**UNITED STATES of America, Plaintiff,**

v.

**Vernon James KLEVE et al., Defendants.**

**No. 4–71–Crim. 154.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 5, 1971.

Robert G. Renner, U. S. Atty., and Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Ronald Haskvitz, Hall, Smith, Juster, Feikema & Haskvitz, Minneapolis, Minn., for defendants Vernon Kleve, George Patterson, Peter Cohen, Evelyn Kleve and Max Weisberg.

Ronald I. Meshbesher, Robins, Meshbesher, Singer & Spence, Minneapolis, Minn., for defendant Neil T. Naftalin.

Douglas Thomson, Thomson, Wylde & Nordby, St. Paul, Minn., for defendants John Ruberto and Vivian Ruberto.

George R. Ramier, Minneapolis, Minn., for defendants Joseph Sierbinski and Richard Samuel Randazza.

Keith D. Kennedy, St. Louis Park, Minn., for defendant David Bohn.

## MEMORANDUM DECISION

LARSON, District Judge.

This case involves eleven defendants, all of whom are charged with violating and/or conspiring to violate 18 U.S.C. §

1955. In order to discover the facts necessary to indict the defendants on these charges the Government found it necessary to use wiretaps. Authority for such was granted pursuant to 18 U.S.C. § 2518, which allows wiretapping in certain well defined situations and under certain stringent and comprehensive constraints.

Following the procedures set out in § 2518, the United States Attorney made application to a District Judge for orders authorizing the taps. Three applications for taps were made and granted, but in only two were communications actually intercepted. Of these two, only one directly concerns the defendants in this case.

On April 28, 1971, application for this wiretap was made and authorization was given by the District Judge. His Order permitted a tap on three phones located at 1414 South Third Street, Apartment 103, Minneapolis. The tap was approved for fifteen days, and did in fact extend from April 29 to May 12.

■ All of the defendants in this case now seek to suppress the contents of the intercepted communications and any evidence subsequently seized as a result of the taps. They allege many different grounds for suppression, including the unconstitutionality of § 2518 itself. It is elementary that a court may only reach a constitutional question if there is no other basis for a decision. In this case it is not necessary to decide the constitutionality of the wiretap statute, since it is this Court's finding that there was not probable cause to authorize the taps initially.

Section 2518 is structured so that certain requirements must be met at all stages of a wiretap. Thus the application procedures must be examined in light of the requirements of subsection (1), the authorizing judge's determination in light of subsection (3), and his Order in light of subsection (4). It is with the subsection (3) requirements for the actual issuance of the Order with which this Court is now concerned.

A tap may only be approved by a judge after he has made a determination, among other things, that:

"there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;" 18 U.S.C. § 2518(3)(a).

■ This Court agrees with counsel for defendants who have argued that the facts contained in the wiretap application and the attached affidavit were not sufficient to justify a finding that there was probable cause to believe an offense enumerated in § 2516 had either been or was about to be committed.

The application and the attached affidavit allege certain gambling activities; however § 2516 does not authorize wiretaps in all cases where it is suspected that someone is a gambler. It only authorizes a tap, in gambling cases, where there is probable cause to believe that there has been or is about to be a violation of either 18 U.S.C. § 1084 or § 1955. One of the elements of a violation of § 1084 is that there be transmission of wagering information in interstate commerce. Clearly there is no allegation of such conduct in the application or affidavit.

18 U.S.C. § 1955 is a complex statute which makes it unlawful to engage in an "illegal gambling business." In order to come within the statutory definition of an "illegal gambling business," five or more persons must be involved. Therefore, a prerequisite for a showing of probable cause to believe a violation of § 1955 has occurred or is about to occur is evidence of participation by at least five individuals. This Court is unable to find such a showing in the application and affidavit presented to the District Judge. Without it the wiretap is invalid and any information gained from it must be suppressed.

■■ While apparently no court has ruled on the question, there is no reason to believe that the probable cause requirements of § 2518 should be inter-

preted any differently than those necessary for a search under the Fourth Amendment. If anything, perhaps they should be interpreted more strictly. Thus probable cause only exists where "the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." Berger v. State of New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967).

When such information is supplied to the judicial officer by affidavit and the affidavit, as is the situation in this case, is based upon informants' statements, the Supreme Court has set out a two point standard by which the sufficiency of the affidavit is to be tested. In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court held that an affidavit may properly rest on such hearsay information so long as it sufficiently presents to the issuing officer the underlying facts and circumstances both (1) from which the informant drew his conclusions, and (2) from which the affiant concluded that the informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. 1509.

Because some courts subsequently paid only lip service to these requirements, the Supreme Court in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), endeavored to "explicate" Aguilar by insisting upon a strict application of the two point standard therein prescribed. It is therefore in light of a strict application of this two point standard that the affidavit in this case must be judged.

Before testing the instant affidavit against the Aguilar standards, it is necessary to note an unusual factor in this case. 18 U.S.C. § 1955 is unique since in order to have probable cause to believe there has been or is about to be a violation of this section, there must be probable cause to believe five persons have violated or are about to violate it. Thus if there is not probable cause as to each of five individuals, there is not probable cause as to any one individual. This makes it necessary to examine the information supplied in the affidavit as to each of the five alleged violators. If the information concerning any one of the five does not meet the Aguilar test, there was not probable cause to believe that a violation of § 1955 had occurred or was about to occur, and as such the wiretap cannot be valid.

It is so clear from the affidavit that there was probable cause to believe that Vernon Kleve, George Patterson and Max Weisberg were conducting a gambling business that it is not necessary to proceed through each step of the Aguilar test. Suffice it to say that the information supplied by the informants and corroborated by independent investigation by the F.B.I. constituted probable cause. There also might have been cause to believe Joe Mancino was involved in the gambling business. Despite the fact that there was no independent corroboration, the informants' statements by themselves might have been sufficient, since they allegedly received their information from Mancino himself, rather than from another "source." However, because of the decision as to the sections of the affidavit relating to Dick Randazza it is unnecessary to decide if those statements alone constituted probable cause as to Mancino.

Randazza's name is mentioned in the affidavit ten times. Of these, five are irrelevant because they are either conclusions of the affiant or merely procedural recitations of names.[1] A sixth is

---

1. Randazza's name is mentioned at the following places in the affidavit:

Page 1, para. 3, alleges that Randazza and others are violating 18 U.S.C. § 1955. No facts given.

Page 3, para. 2, concludes that there is probable cause to believe that certain phone numbers are being used in the gambling operation by Randazza and others. No facts given.

also not useful since it merely is a conjectural statement by the affiant and by his own admission is not based on fact.[2] Thus a determination of the sufficiency of probable cause must be made from the remaining four references. If they do not recite facts sufficient to show that Randazza had engaged or was about to engage in activity which, if it were done in consort with four or more other persons, would have constituted an "illegal gambling business" as defined by 18 U.S.C. § 1955, then there was not probable cause to believe that any violation of Federal law had occurred or was about to occur. If that is the case, the wiretap and all of the fruits thereof must be suppressed.

Is the first *Aguilar* requirement met here—*i. e.*, are the facts and circumstances from which the informant drew his conclusions set out? On page four of the affidavit is the following statement:

> "(8). Sources 1, 2, and 3, all known gamblers, in February, 1971, told me that Vernon J. Kleve, George Patterson, Max Weisberg, also known as 'Flowers', and Dick Randazza were using Apartment 111, 2747 Stevens Avenue South, Minneapolis, Minnesota, in their bookmaking business . . . . That all three sources have placed bets at these numbers during March, 1971, through Max Weisberg, also known as 'Flowers' or Vernon J. Kleve."

This describes how the informants knew Kleve and Weisberg were running a bookmaking business, since it says they placed bets at telephone numbers which were answered by either Kleve or Weisberg. However, there is no clue as to how they knew that Dick Randazza was involved in the operation. There are no facts here which could be used by an independent observer to conclude Randazza was involved. This constitutes a failure to comply with the first *Aguilar* requirement.

Another mention of Randazza occurs on page seven in paragraph four. It reads as follows:

> "That Source Number 3 on February 24, 1971, advised that Vernon J. Kleve, George Patterson, Max Weisberg, also known as 'Flowers', Dick Randazza, also known as 'Randy', and Joe Mancino comprised the Vernon J. Kleve gambling combination and that this group is referred to as the Lake Street Gang or the Lake Street Book. Source Number 3, advised on February 24, 1971, that he places bets with this gambling combination through Minneapolis telephone numbers . . . to Max Weisberg."

There is again no indication as to what facts led Source Number 3 to believe that Randazza was a part of the Lake Street Book. The only facts given to support his statement concern Weisberg's activity with this gambling operation. Thus again the first *Aguilar* test is not met; there are no facts showing the basis for the informant's conclusions.

There are two other places in the affidavit where Randazza is mentioned, but they too fail to meet the first *Aguilar* test. On page seven in paragraph three an informant is credited with having said that he was told by Vernon Kleve that the Kleve gambling combination was now comprised of Patterson, Weisberg, Kleve, Joe Mancino, and Randazza. At this point the informant comes closer to meeting the first *Aguilar* test than the informers discussed above, since he states the facts on which he bases his information, *i. e.*, he got it from Kleve. However, here the examination of the

---

Page 4, para. 4, discussed in text.
Page 7, para. 3, discussed in text.
Page 7, para. 4, discussed in text.
Page 11, para. 4, discussed in text.
Page 14, para. 3, statement that normal investigative procedures are likely to be futile. Not relevant to probable cause.

Page 16, para. 1, discussed in text at Note 2.
Page 16, para. 3, relates to abortive wire tap of March 23, 1971.
Page 17, para. 1, relates to termination of tap.

2. See page 16, para. 1.

affidavit must be carried one step further since this portion of it is double hearsay. In a double hearsay situation both the informant and his "informant" must meet both *Aguilar* requirements.[3] Kleve, as the "informant's informant," would by no stretch of the imagination meet the first *Aguilar* test. There are no facts given which show the basis of his assertion that Randazza was associated with him. A recitation of the underlying facts is essential; without such it is impossible for anyone to make an independent judgment as to probable cause.

For the same reasons, the statements by Sources Number 2 and 3 on page eleven in paragraph four are not sufficient to show probable cause. They, too, are double hearsay. The facts on which Patterson, the "informant's informant," based his statement concerning Randazza's involvement were not set out so that the issuing officer could make an independent determination of their reliability. Without these underlying facts, an independent judgment was impossible.

The only basis for probable cause to believe that Dick Randazza was involved in a gambling business was several hearsay statements; rather than stating facts from which an independent observer could draw his own conclusions, they were mere bald assertions, apparently without factual basis. Neither was there any independent corroboration of gambling activity by Randazza. This type of completely hearsay information with no visible justification in fact is just what the Fourth Amendment prohibits. As the Court said in *Spinelli*:

"In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." At 416, 89 S.Ct. at 589.

It is therefore the judgment of this Court that sufficient facts were not set out in the affidavit for a determination that Dick Randazza had engaged or was about to engage in gambling activity as described in § 1955(a). Thus there was not probable cause to believe that § 1955 had been or was about to be violated, since there was no evidence of participation by five persons.

■ Suppression of this evidence is not done lightly, since in all likelihood it will eliminate any possibility of prosecution of these defendants. However, wire tapping cases differ from other situations requiring showings of probable cause. Here there was ample time to prepare a proper affidavit and application. Unlike a case where evidence may be destroyed or an illegal act quickly consummated, the Government here had considerable time to prepare its affidavit. Strict compliance with probable cause standards seems not only justified, but absolutely necessary, when dealing with wire tapping, which is by its very nature an invasion of citizens' privacy, albeit a permissible one in certain cases. *Berger, supra,* 388 U.S. at 56, 87 S.Ct. 1873, 18 L.Ed.2d 1040.

Wire tapping is indeed "a dirty business" as Mr. Justice Holmes said over forty years ago.[4] It must be given the

---

3. This requirement is evident from the *Spinelli* opinion, where the Court said:

"Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed.2d 637.

This conclusion is buttressed by the concurrence in *Spinelli* written by Mr. Justice White, wherein he stated:

"If the affidavit rests on hearsay—an informant's report—what is necessary under *Aguilar* is one of two things: the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it . . . ." 393 U.S. at 425, 89 S.Ct. at 593.

4. Olmstead v. United States, 277 U.S. 438, 470, 48 S.Ct. 564, 72 L.Ed. 944 (Holmes, J., dissenting).

most careful scrutiny by the courts, lest the immense power of the Government completely devour citizens' liberties. Indeed, when wire tapping is involved there is a "heavier responsibility on this Court in its supervision of the fairness of procedures  . . . ." than in any other area. Osborn v. United States, 385 U.S. 323, at 329 n. 7, 87 S.Ct. 429, 433, 17 L.Ed.2d 394 (1966).

On the basis of the above mentioned reasons and authorities, the motion to suppress the wire taps is granted.