**UNITED STATES of America,
Appellant,**

v.

**Vernon James KLEVE et al., Appellees.
No. 71–1702.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1972.

Decided July 25, 1972.

---

8. See, e. g., Sostre v. McGinnis, *supra*, 442 F.2d at 192 and cases cited; Bundy v. Cannon, 328 F.Supp. 165, 171 (D.Md. 1971), and cases cited.

Robert J. Vedatsky, Atty., Dept. of Justice, Washington, D. C., Robert G. Renner, U. S. Atty., Minneapolis, Minn., for appellant.

Keith D. Kennedy, St. Louis Park, Minn., for appellee Bohn.

Ronald L. Haskvitz, Minneapolis, Minn., for Kleve, and others.

John Wylde, Thomson, Wylde & Nordby, Douglas W. Thomson, Jack S. Nordby, Saint Paul, Minn., for appellees Rubertos.

Before VAN OOSTERHOUT and MURRAH*, Senior Circuit Judges, and HEANEY, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

Defendants Vernon James Kleve, Neil Thomas Naftalin, John Ruberto, Vivian E. Ruberto, George M. Patterson, Joseph C. Sierbinski, Richard S. Randazza, David Bohn, Peter Cohen, Evelyn D. Kleve and Max Weisberg were indicted by the grand jury on charges of violating 18 U.S.C.A. § 1955 and of conspiring to violate said statute under 18 U.S.C.A. § 371.

Chief Judge Devitt, upon application supported by affidavit authorized by the Attorney General, by order entered April 28, 1970, had authorized pursuant to 18 U.S.C.A. § 2518 a tap on three phones located at 1414 South Third Street, Minneapolis, for a period of not to exceed fifteen days. The wiretap was put into operation from April 29 to May 12 and conversations of the defendants were intercepted thereunder.

Judge Larson, before whom this case was pending, on November 5, 1971, sustained motions of all defendants to suppress the contents of the intercepted communications and any evidence subsequently seized as a result of the tap. The basis of the decision, set out in a detailed memorandum opinion (337 F. Supp. 557) will be discussed hereinafter.

For reasons hereinafter stated, we reverse and vacate the suppression order.

The Government filed notice of appeal from the suppression order on November 26, 1971. On December 28, 1971, the Government filed an affidavit by Thorwald Anderson, Jr., stating that he is Assistant United States Attorney for the District of Minnesota acting on behalf of the United States Attorney; that he has filed an appeal from the suppression order in this case pursuant to 18 U.S.C.A. § 3731; that the appeal is not brought for the purpose of delay, and that the suppressed evidence is a substantial proof of a fact material in the proceedings. The affidavit is dated and notarized on November 26, 1971.

Four separate briefs are filed upon behalf of the various defendants. The principal issues raised by all parties are: (I.) Is this court without adequate jurisdiction to entertain this appeal because the certification required by § 3731 was not made within the thirty days allowed for appeal? (II.) Is the trial court's finding that the affidavit in support of the wiretap application is insufficient to show probable cause to believe that the five persons named therein were engaged in a gambling operation within the meaning of 18 U.S.C.A. § 1955 clearly erroneous?

Some defendants raise additional issues attacking the sufficiency of the application and the constitutionality of the wiretap statutes. The issues raised will be considered in the order just stated.

I.

██ 18 U.S.C.A. § 3731 expressly authorizes an appeal to the Court of Appeals from a pretrial decision of the District Court suppressing evidence "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." Defendants contend that the certification provision just quoted constitutes a condition precedent to a § 3731 appeal and that the filing of the affida-

---

* Senior Circuit Judge, Tenth Circuit, sitting by designation.

vit within the thirty-day period allowed for an appeal is mandatory. The only case interpreting this aspect of the statute that we can find is United States v. Welsch, 10 Cir., 446 F.2d 220, which holds:

"The statute allowing a Government appeal does not expressly set a time limitation for certification. A failure to file the certificate within thirty days is an irregularity in perfecting the appeal but does not operate to deprive the court of jurisdiction." 446 F.2d 220, 224.

The time for taking appeals under § 3731 is the same provided generally for taking criminal appeals by Rule 3, F.R.A.P. Such rule contains a provision reading:

"Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

Section 3731 contains an express provision reading: "The provisions of this section shall be liberally construed to effectuate its purposes."

Section 3731 makes no requirement that the District Court pass upon the validity of the United States Attorney's certification. In this respect the statute differs significantly from statutes like 28 U.S.C.A. § 1292(b) where the District Court is required to make a certification and the time for appeal is directly tied to the date of the certification. If in the present situation Congress intended the certification within the period for appeal to be jurisdictional, we believe that it would have said so. No possible prejudice to the defendants' rights has been shown by the slight delay in the filing of the certificate. We are satisfied from our examination of the record that the certification is factually supported.

■ Defendants' contention that the Assistant United States Attorney in charge of the prosecution cannot be delegated authority by the United States Attorney to file the certificate lacks merit. We hold that we have jurisdiction to entertain this appeal.

## II.

■ Judge Larson in his memorandum opinion correctly determined that among the requirements to be met to authorize a wiretap is the portion of 18 U.S.C.A. § 2518 reading:

"'there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;' 18 U.S.C. § 2518(3)(a)."

The wiretap application alleges a violation of 18 U.S.C.A. § 1955 which is one of the particular offenses enumerated in § 2516.

Section 1955 is a complex statute making it unlawful to engage in an "illegal gambling business" which is defined by § 1955(b)(1) as follows:

"(i) is a violation of the law of a State or political subdivision in which it is conducted;

"(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

"(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

Items (i) and (iii) of the definition are satisfactorily established. The controversy relates to item (ii). The trial court correctly determined that a prerequisite for showing probable cause to believe § 1955 had been violated is evidence of participation by at least five persons who "conduct, manage, supervise, direct, or own all or part of such business." The trial court also determined that the probable cause requirements of § 2518 should at least be interpreted as strictly as probable cause for a search warrant under the Fourth Amendment. Berger v. State of New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 18 L.Ed.2d 1040, and that when, as here,

the affidavit is based on an informant's statements, the standards set out in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, must be applied.

Under such authorities, an affidavit may properly rest on hearsay as long as it sufficiently presents to the issuing judicial officer the underlying facts and circumstances both (1) from which the informant drew his conclusions and (2) from which the affiant concluded that the informant was credible and his information reliable. We agree that such are appropriate standards.

The trial court properly found that the second test relating to the reliability of the informants has been met. The affidavit is based on information provided by three unnamed informants, all known gamblers. Number one over a four-year period furnished information of gambling activities on at least thirty-five occasions which information had always proved reliable. Number two had furnished gambling information on at least one hundred occasions over a sixteen-year period which investigation had always proved to be reliable. Number three has been a gambler for over twenty-five years and since 1965 has furnished information on other occasions which on investigation has proved to be reliable.

The affidavit in support of the wiretap, which consists of seventeen pages, is signed by Richard Anderson, Special Investigator for the FBI, an agent with nineteen years experience, seven of which were devoted to gambling activities. Based upon his experience with gambling activities and information provided by the informants, some of which upon investigation has been corroborated, he asserts there is probable cause to believe that Kleve, Patterson, Weisberg, Mancino and Randazza, and others as yet unknown, are engaged in illegal gambling activities in violation of § 1955.

Judge Larson held that the affidavit clearly provided probable cause to believe that Kleve, Patterson and Weisberg were engaged in illegal gambling operations. Such determination is clearly supported and is not contested. Judge Larson also determined that there may be probable cause to believe that Mancino was also involved upon the basis of an admission to that effect made to an informer. He held, however, that the affidavit failed to set out underlying facts and circumstances to establish probable cause to believe that Randazza was engaged in the illegal gambling enterprise and hence that there is no basis under the rules laid down in Spinelli and Aguilar for believing that the required five persons were engaged in the illegal gambling operation.

Thus the dispute is whether the affidavit supplied probable cause for a judicial officer to believe that Randazza was a participant in the illegal enterprise.

Relevant allegations contained in the supporting affidavit include:

"That Source Number 1, on February 24, 1971, advised that the Vernon J. Kleve gambling combination is now comprised of, in addition to Kleve, Max Weisberg, also known as 'Flowers', George Patterson, Dick Randazza, and Joe Mancino, who is the operator and owner of the Town Pump Bar, 801 Northeast Marshall, Minneapolis, Minnesota, due to the fact he was told this by Kleve. This combination utilizes telephone numbers 825–2171 and 825–7620, and on February 24, 1971, Source Number 1 did place a bet to this gambling combination through one of the above numbers to Max Weisberg."

\* \* \* \* \* \*

"Sources Number 2 and 3 stated on April 13, 1971, that within the past week they were both told by Patterson that he is still associated with Kleve, Dick Randazza, Joe Mancino and Max Weisberg in the taking of bets.

"Source Number 2 also advised on April 13, 1971, that he had been told by Joe Mancino on April 10, 1971, that Mancino is still taking bets at the Town Pump Bar and calls some of the

bets into the Kleve bookmaking operation."

Judge Larson rejected the quoted statements and the affidavit as a whole as constituting probable cause to believe Randazza was a participant on the following basis:

"At this point the informant comes closer to meeting the first Aguilar test than the informers discussed above, since he states the facts on which he bases his information, i. e., he got it from Kleve. However, here the examination of the affidavit must be carried one step further since this portion of it is double hearsay. In a double hearsay situation both the informant and his 'informant' must meet both Aguilar requirements. Kleve, as the 'informant's informant,' would by no stretch of the imagination meet the first Aguilar test. There are no facts given which show the basis of his assertion that Randazza was associated with him. A recitation of the underlying facts is essential; without such it is impossible for anyone to make an independent judgment as to probable cause." 337 F. Supp. 557, 561–562.

Defendants rely principally upon the double hearsay reasoning to support the trial court's ruling.

This court analyzed and rejected double hearsay as a bar to probable cause in United States v. Smith, 8 Cir., 462 F.2d 456 (June 27, 1972), stating:

"We do not agree. It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant. See Spinelli v. United States, 393 U.S. 410, at 416–417, [89 S.Ct. 584, 21 L.Ed.2d 637], discussing Draper v. United States, 358 U.S. 307, [79 S.Ct. 329, 3 L.Ed.2d 327] (1959). Therefore, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred 'that the informant gained his information in a reliable way.' Spinelli, supra, 393 U.S. at 417, [89 S.Ct. 584]. The magistrate must canvass the affidavit and the informer's tip as a whole and measure it against Aguilar standards in order to assess its probative value.

"We pointed out in McCreary v. Sigler, 406 F.2d 1264, 1268 (8th Cir. 1969), that the Aguilar requirements 'must be weighed with the added analysis of Spinelli * * *. Under Spinelli the magistrate must know that he is relying on information of substance, not upon 'casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.' 393 U.S. at 416, [89 S.Ct. 584]; McCreary, supra, 406 F.2d at 1268.

\* \* \* \* \* \*

"The crucial question here, however, is not, as suggested by appellants, whether the affiant can attest to the reliability or credibility of the second individual, but whether the information furnished by the informant, taken as a whole, can be said to be reliable. The affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt." (Citations omitted.) 462 F.2d 456, 459.

We adhere to the views there expressed.

In United States v. Harris, 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, the Court states: "It will not do to say that warrants may not issue on uncorroborated hearsay. This only avoids the issue of whether there is reason for crediting the out-of-court statement."

[5] This case is readily distinguishable factually from *Aguilar* and *Spinelli*. We find no basis in such cases to support the trial court's ruling. The supporting affidavit reflects that separate informants on different occasions were

informed by Kleve and on other occasions by Patterson that the illegal gambling organization consisted of Kleve, Weisberg, Patterson, Randazza and Mancino. Upon calling the phone numbers provided, the informants placed bets with Weisberg. The trial court had reliably found that at least Kleve, Patterson and Weisberg were associated in an illegal gambling operation. It is reasonable to believe that co-owners and operators of a business have personal and reliable knowledge as to the identity of their partners and associates. The separate disclosures by Kleve and Patterson to the separate informers lend strength to the reliability of the information that the gambling business was owned and operated by the five alleged participants.

As previously noted, Chief Judge Devitt prior to the issuance of the order made a factual determination that probable cause exists for the issuance of the wiretap order. The Court in *Spinelli* states:

"[W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96 [, 85 S.Ct. 223, 228, 13 L.Ed.2d 142] (1964); that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311 [, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62] (1967); that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108 [, 85 S.Ct. 741, 745, 13 L.Ed.2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, 362 U.S. 257, 270–271 [, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697] (1960). . . ." 393 U.S. 410, 419, 89 S.Ct. 584, 590–591.

We hold that the affidavit when considered as a whole provides probable cause for the issuance of the wiretap order and that the court erred in issuing the suppression order.

### III.

Counsel for John and Vivian Ruberto raise additional issues not raised by other defendants, including the following: (1) The application does not adequately show the degree of participation required by § 1955(b)(2). (2) The application failed to adequately show why normal investigative procedures are inadequate. (3) The wiretap violates the Fourth Amendment as it authorizes a search of unreasonable duration. (4) The wiretap order is overbroad in violation of the Fourth Amendment.

None of these issues was raised or passed on in the trial court. We find such contentions lack merit. See United States v. Cox, 8 Cir., 462 F.2d 1293 (June 5, 1972).

The suppression order is reversed and vacated. The case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.