**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Alfred DeCESARO et al., Defendants.**

**No. 71-CR-169.**

United States District Court,
E. D. Wisconsin.

Nov. 1, 1972.

See also, D.C., 54 F.R.D. 596.

David J. Cannon, U. S. Atty., Milwaukee, Wis., for plaintiff.

Franklyn M. Gimbel, Milwaukee, Wis., for defendants DeCesaro and Thomas.

Eugene Brookhouse, Kenosha, Wis., for defendants Germinaro, Gregorski, and Salerno.

Robert E. Sutton, Milwaukee, Wis., for defendant Puntillo.

Jay Schwartz, Racine, Wis., for defendants Manna and Gerolmo.

Dominic H. Frinzi, Milwaukee, Wis., for defendants Woodbury and Matera.

## OPINION AND ORDER SUPPRESSING EVIDENCE

REYNOLDS, District Judge.

The eleven defendants named in this indictment are charged with partici-

pating in an illegal gambling business in violation of 18 U.S.C.A. § 1955. Eight of the eleven defendants have moved to suppress evidence obtained through a wire tap authorized ex parte by this branch of this court pursuant to the provision of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. § 2510 et seq.

The motion to suppress focuses on three aspects of the wiretap procedure: (1) the authorization to make application for the wiretap order was improper, (2) there was not a showing of probable cause in the affidavit in support of the application for the wiretap order, and (3) the statement as to utilization of other investigative procedures is insufficient.

### Authorization of the Application

Section 2516(1) of Title 18 provides in part:

"The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge * * * for * * * an order authorizing or approving the interception of wire or oral communications * * *."

Exhibit "A" to the Government's application in this case purports to conform to the requirements of the statute. The exhibit is a letter to Michael B. King of the Chicago strike force bearing the purported signature of Will Wilson, Assistant Attorney General. In part the letter provides:

"* * * you are hereby authorized under the power specially delegated to me in this proceeding by the Attorney General of the United States, the Honorable John N. Mitchell, pursuant to the power conferred on him by Section 2516 of Title 18, United States Code, to make application to a judge * * * for an Order * * * authorizing the Federal Bureau of Investigation to intercept wire communications * * *."

At the hearing on the motion to suppress, it was conceded that Will Wilson did not sign the letter referred to above. Thus, there is an apparent failure to comply with the mandate of the statute.

Subsequent to the hearing, affidavits were submitted by the Government setting forth what the facts were relative to the authorization of the application for the wiretap order. These may be summarized briefly. A request for the authorization was made by the director of the Federal Bureau of Investigation. The file accompanying the request was studied by attorneys in a special unit of the organized crime and racketeering section of the Criminal Division of the Department of Justice. The Deputy Assistant Attorney General of the Criminal Division, Henry E. Petersen, then reviewed the file and forwarded it to the office of the Attorney General with a recommendation that the authorization be granted. The request was approved personally by the then Attorney General John N. Mitchell. The Attorney General's memorandum of approval constituted notification to the Assistant Attorney General of the Criminal Division that discretionary action approving the request to make application had been taken by the Attorney General. Following approval by the Attorney General, Petersen prepared and signed Wilson's name to the letter referred to above.

■ While authorization for the application for the wiretap order was not made as recited in the letter submitted wih the application, the Attorney General did personally approve the making of such an application. This has been held to be sufficient compliance with the statute. United States v. Whitaker, 343 F.Supp. 358 (E.D.Pa.1972); United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa.1971); United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa.1972); United States v. Doolittle, 341 F.Supp. 163 (M.D.Ga.1972). The cases relied on by the defendants holding that the statute was not complied with are distinguishable on their facts in that in

those cases neither the Attorney General nor an Assistant Attorney General specially designated gave any authorization. United States v. Robinson (5th Cir. 1972), 10 Cr.L. 2281; United States v. Casale, 341 F.Supp. 374 (M.D.Pa. 1972); United States v. Focarile, 340 F. Supp. 1033 (D.Md.1972); United States v. Baldassari, 338 F.Supp. 904 (M.D.Pa. 1972). The statute requiring authorization for an application for a wiretap order has been sufficiently complied with in this case.

*Probable Cause for the Wiretap Order*

Section 2518(3)(a) requires that before an order authorizing a wiretap be issued, a judge must determine that there is probable cause to believe that an offense has been committd or is being committed. The defendants challenge the sufficiency of the probable cause showing contained in the affidavit submitted in support of the wiretap application. The application states that the affidavit attached thereto contains probable cause to believe that § 1955 of Title 18 has been or is being violated, or that there is a conspiracy to violate that section.

■ Section 1955, enacted in 1970, prohibits illegal gambling business. Part of the definition of "illegal gambling business" contained in the statute requires that five or more persons be involved in the gambling business. 18 U.S.C.A. § 1955(b)(1)(ii). Consequently the affidavit in support of the application for the wiretap herein must contain a probable cause showing that five or more persons were involved in a gambling business. United States v. Kleve, 337 F.Supp. 557 (D.Minn.1971). I am of the opinion that the affidavit in support of the application for the wiretap does not contain a probable cause showing that five persons participated in an illegal gambling business.

■ At the outset of my discussion of the probable cause aspects of the affidavit, I would like to note that the probable cause requirements under this statute are no different than those necessary to obtain a search warrant under the Fourth Amendment. United States v. Kleve, supra. A fair reading of the entire affidavit in this case clearly indicates that it is the Government's theory that Alfred Frank DeCesaro is the key figure in the gambling business. There is a clear showing of probable cause that DeCesaro is engaged in a gambling business. It is further my finding that there exists probable cause to believe that Angelo Germinaro is a participant with DeCesaro in a gambling business. However, I have substantial doubts that the affidavit presents a probable cause showing sufficient to find that a total of five persons were or are engaged in this same gambling business so as to make it an illegal gambling business under § 1955 of Title 18.

■■ The affidavit makes reference to Raymond James Matera. It shows that Matera has one prior gambling conviction in 1965 (Par. 8). It further states that a confidential source "No. 3" learned through individuals involved with DeCesaro that Matera was accepting bets and "laying them off" with DeCesaro (Par. 25). While an affidavit may rest on hearsay, it must present to the issuing officer the underlying facts and circumstances both (1) from which the informant drew his conclusion, and (2) from which the affiant concluded that the informant was credible or his information reliable. Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Further, if an informant supplying information to an affiant came by his information indirectly, as here with respect to Matera, there must be a showing that his sources were reliable, Spinelli v. United States, supra, at 416, 89 S.Ct. 584. While source number three may have met the *Aguilar* requirements, his source of information clearly does not. There is no showing that those individuals involved in gambling activities with DeCesaro are reliable informants or what the underlying facts and circumstances were that led them to the conclusion that

Matera was accepting bets and laying them off with DeCesaro. The affidavit does not show that Matera was engaged in the gambling business with DeCesaro and Germinaro.

The affidavit refers to James Salerno. It shows that he was visited by Angelo Germinaro at his place of business (Par. 23); that he was visited by Ronald Lee Gregorski at his place of business (Par. 24); that confidential source number three was told by Salerno to place bets with him or Gregorski (Par. 29); and that on another occasion Germinaro met with Salerno (Par. 32). The reference in the affidavit that Salerno had a meeting with DeCesaro and others to discuss betting losses and that Salerno asked DeCesaro for help is the result of information supplied to affiant by confidential source number four who obtained it through unidentified individuals closely associated with DeCesaro and Germinaro. The reliability of these individuals is not shown, and the facts and circumstances on which they based their information are totally lacking and is thus unacceptable under the *Aguilar* and *Spinelli* requirements.

The affidavit makes reference to Joseph Michael Buratti. It shows that confidential source five saw an individual identified as "Angie" collect money from Buratti (Par. 28) and had observed Buratti accept bets, give odds, and accept betting money on several occasions (Pars. 28, 31, and 35). Source number five is identified only as a private citizen, a lifelong resident of Kenosha, and an acquaintance of Buratti's. There is no showing of the credibility and reliability of source number five who voluntarily contacted the F.B.I. The other reference to Buratti's connection with a gambling business is contained in paragraph 38 and is information received by the affiant from source number three who obtained it from individuals involved in gambling and who deal with DeCesaro who stated that Buratti accepts bets and lays them off with DeCesaro. Once again the credibility and reliability of source three's informants is unascer-

tainable, and the facts and circumstances by which they came by their information are undisclosed. There is no showing of probable cause that Buratti was engaged in a gambling business with DeCesaro and Germinaro.

The affidavit makes reference to Eugene Francis Thomas. It shows that he has a prior arrest for gambling in 1967 (Par. 6); that Thomas confided to source one that he was taking "straight action" (Par. 37); that source six observed Thomas taking bets at his place of business and that DeCesaro had been in the place of business (it is unknown if DeCesaro was present when bets were placed) (Par. 41); and that source six observed Thomas accept bets (Par. 48). Other reference to Thomas' involvement cannot be considered in determining the existence of probable cause because of the failure to meet *Aguilar* and *Spinelli* standards. Paragraph 33 contains reference to Thomas but is based on information supplied to source number four by individuals associated with DeCesaro and Germinaro. Their reliability and credibility are unascertainable, and the facts and circumstances of how they obtained their information are not disclosed. Paragraph 44 indicates that Thomas accepted bets over one of the telephone lines tapped and that DeCesaro makes collections and payoffs on bets given to Thomas. This information is based on source three's personal contact with DeCesaro and information obtained from individuals closely associated with DeCesaro. The facts and circumstances surrounding the obtaining of this information is not set forth, and the reliability and credibility of the individuals associated with DeCesaro cannot be determined. Probable cause that Thomas is one of the five persons engaged in the gambling business with DeCesaro is at best dubious.

The affidavit makes reference to Ronald Leo Gregorski. It recites that he has been observed going into Salerno's place of business (Par. 24); that Salerno told source three to place bets with him

or Gregorski (Par. 29); that a former police undercover agent, Leo A. Bronk, observed Gregorski accept bets and forward betting information over the telephone (Par. 36); and that Gregorski told source three that he takes bets and works for Salerno (Par. 43). Source three advised affiant that an individual closely associated with Salerno advised that Gregorski was laying off bets with Germinaro. Again, source three's unnamed source does not meet *Aguilar* and *Spinelli* standards. Finally, there is reference in the affidavit that source two observed that Gregorski accepted bets at his place of employment (Par. 47). The affidavit does not furnish sufficient cause to believe that Gregorski was one of the five persons engaged in a gambling business with DeCesaro.

References to other individuals in the affidavit are so scant that they do not warrant discussion as to their participation as being one of five or more persons engaged in a gambling business.

 In summary, § 1955 requires as an element of the offense described therein that five or more persons participate in à gambling business. It is obvious that the statute contemplates that five or more persons join together in some manner in the same gambling business in order that that business be declared illegal under the statute. When the recitations of the affidavit are fully considered together, excluding those that do not satisfy the requirements for consideration in determining probable cause as enunciated in *Aguilar* and *Spinelli*, there is no showing that there is probable cause that five or more of the persons named in paragraph 2 of the affidavit, or others, are or were participating together in some manner or other in the same gambling business. The affidavit does not contain a showing of probable cause to believe that § 1955 is being violated or has been violated, or that there is a conspiracy to violate that section. Suppression of the evidence obtained by the wiretap order must follow.

*Sufficiency of the Statement Regarding Other Investigative Procedures*

The statute, 18 U.S.C.A. § 2518, requires that the application for a wiretap order contain " * * * a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried * * *." 18 U.S.C.A. § 2518(1)(c). A careful scrutiny of paragraphs 50 and 51 of the affidavit, viewed in light of all other recitations in the affidavit and the known difficulty of investigations of gambling activities, lead me to conclude that the application for the wiretap order does meet the statutory requirement.

For the reasons hereinbefore stated, I conclude that there is an insufficient showing of probable cause to believe that 18 U.S.C.A. § 1955 has been, is being, or is about to be violated.