## Commonwealth v. Wright

*Ralph A. Matergia,* for Commonwealth.
*George W. Westervelt, Jr.,* and *George E. Goldstein,* for defendants.

THOMSON *J.,* June 5, 1978—Defendants Wright and Draper, in the above-captioned matters, have filed various pre-trial motions with the court, including, inter alia, motions to quash the magistrate's return of preliminary hearing, and applications to suppress various physical evidence seized against defendants. These motions are now before the court for determination.

## I. DEFENDANT WRIGHT'S MOTION TO QUASH THE MAGISTRATE'S RETURN OF PRELIMINARY HEARING

Two preliminary hearings were held on the charges against defendant Wright, one taking place on November 1, 1977, and the other on December 15, 1977. It has been stipulated by counsel that the court will decide the merits of this motion, and the companion motion filed on behalf of defendant Draper, based on the notes of testimony of said hearings.

It is time-honored law in the Commonwealth of Pennsylvania that at a preliminary hearing, just as at a hearing in the nature of a habeas corpus, the Commonwealth must produce evidence that would constitute "sufficient probable cause to believe, that the person charged has committed the offense stated," that is, the Commonwealth must make out a prima facie case of guilt against defendant: Com. ex rel. Scolio v. Hess, 149 Pa. Superior Ct. 371, 27 A. 2d 705 (1942). It is not necessary at such pro-

ceedings that the Commonwealth produce evidence so as to require a finding by a jury of the guilt of the accused beyond a reasonable doubt, as a preliminary hearing, just as a proceeding in a nature of habeas corpus is not a trial.

Applying the standards set forward above to the instant proceedings, we will examine the evidence against defendant Wright in order to determine whether the magistrate's return, which indicated a prima facie case on all charges, those of conspiracy, theft of telecommunications services, and manufacture, possession or distribution of devices for theft of telecommunications services should be quashed. . . .

Next, we will consider the charge of theft of telecommunications services against defendant Wright. A plethora of highly complex technical testimony was elicited at the preliminary hearing to establish the fact that certain telephone calls were made illegally from a telephone which was listed in defendant Wright's name, and was located at his residence. Testimony was further elicited that defendant Wright owned a certain SOL computer, which was seized as a result of the search of the premises. This computer was not connected to the telephone lines at the said premises, and did not have the capacity to communicate with the telephone system. More pertinently, no testimony was elicited whatsoever as to who made the illegal calls in question. On the contrary, the Commonwealth's witness, one Beam, indicated he did not know who made the illegal calls in question. Under the circumstances, the court likewise has no choice but to grant the motion to quash with respect to this charge.

Lastly, we are left with the violation of section 910(1)(i), (ii) of the Pennsylvania Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §910, manufacture, distribution, and possession of devices for theft of telecommunications services.

The item in question that is the basis for this charge against defendant Wright is a certain SOL processor technology computer, which defendant Wright readily identified as being his at the time of his arrest.

It was established through testimony at the preliminary hearing that for a device to be used for theft of telecommunications services, it must be able to generate tones which may be used to manipulate the telephone system in the manner as a touch-tone telephone will do, as is the case of a so-called "blue box." Testimony was further elicited by experts of the Bell Telephone Company that the computer seized and identified as defendant Wright's cannot create such tones.

It was further established that in order for such a computer as this to generate such tones, it is necessary to utilize a "DAC," being a digital to analog converter. A hand-written diagram for such a DAC was uncovered in the search of said premises. Such a converter was then built by employes of Bell Telephone Company and connected to the Wright computer, as a result of which tones could be generated, but were thereafter unsuccessful in making illegal calls, although same were attempted.

We do not find it of the greatest significance that the illegal calls could not be successfully made. As was indicated, the existence of side tones on the frequencies could prevent such a fraudulent call from being completed. However, we are concerned

with the attempt by the Commonwealth to build a missing ingredient into the case against defendant. By supplying such a missing ingredient, the Commonwealth would have us find that the instrument without the converter in question, and not being set up for the purpose of making telephone calls in any fashion, was a device for the interception of telecommunications services. This the court is not prepared to do, and hence, feels bound to likewise quash the magistrate's return against defendant Wright on this charge.

## II. MOTION OF DEFENDANT DRAPER TO QUASH MAGISTRATE'S RETURN OF PRELIMINARY HEARING

We have discussed at some length the failure of the Commonwealth to prove a prima facie case against defendant Wright on the charges of conspiracy and theft of services. We find the same statements to be applicable to the case of defendant Draper. There is not a scintilla of evidence in the transcript of the magistrate's hearing which would justify a prima facie finding against either defendant on either charge. Hence, the court will grant the motion of defendant Draper to quash the magistrate's return of preliminary hearing on those two charges.

However, we detect a noticeable distinction with regard to the charge of possession of an instrument for theft of telecommunications services with regard to defendant Draper. It was testified to at the preliminary hearing that defendant Draper owned an Apple computer, which was readily admitted by Draper as being his at the time of the arrest and search of the premises in question. It was further testified that a possible application of this computer

could be for purposes of committing telephone fraud, if there was an acoustical or electrical connection to the telephone network to bring about manipulation of the network, and that in the computer in question there is such an inner-face circuit. Moreover, this computer was "hard-wired" directly to the telephone connecting terminal for the telephone service on the premises.

Based on defendant's identification of this equipment as his, as well as the fact that such equipment had the present operating capacity to commit telephone fraud, we find that the Commonwealth did meet its burden of establishing a prima facie case as to this charge. Hence, the motion of defendant to quash the magistrate's return as to this charge will be denied.

### III. APPLICATION OF DEFENDANT DRAPER TO SUPPRESS EVIDENCE

*A. Defectiveness of the search warrant as not supported by probable cause.*

Both Commonwealth and defense have agreed that the United States Supreme Court has set forward what is known as the "two-prong" test for determining the sufficiency of probable cause where an affidavit is given based upon hearsay information. That is, the affiant must give the issuing authority the facts which will enable such authority to make two independent judgments; 1. the affidavit must contain sufficient underlying circumstances to permit the magistrate to make an independent judgment as to the validity of the informant's information; secondly, the affidavit must contain a showing that the informant is reliable: Aguiliar v. Texas, 378 U.S. 108 (1964).

The affidavit in this particular case recites that defendant Draper was living in the home of one Edward McFarland at The Hamlet, Price Township, Monroe County, Pa., on October 17, 1977, as established by the informants. It further recites that Wortley A. Wright, Jr., occupied the said premises, and subscribed to a telephone service with telephone number 717-595-3088. Thereafter, electronic surveillance was monitored by the informants, wherein telephone calls were identified to a certain WATS line in Oakbrook, Illinois. Thereafter, by use of a touch-tone pad, which is not available through the 595 telephone exchange, access was gained to another dial tone by which touch-tone calls were made to New York and California. Thereafter, sporadic calls were made to other 800 WATS lines, including one in Florida, which was followed up by extended multi-frequency calls to other parties in different states. The informants in question were four employes of the Bell Telephone Company, William Beam, Wilfred Dunne, John Isenhooth, and Mrs. G.H. Orner. The affidavit further sets forth the employment qualifications and experience of the employes, and recites that they are known as honest and truthful to the applicant.

We feel that the affidavit, as written, satisfies these two-prong requirements. We believe that an adequate basis was established of underlying circumstances to permit the magistrate to make a judgment as to the validity of the informants' information. Secondly, we feel that the reliability of the affiant's informants was well-established by the recital in the affidavit. Hence, it is the conclusion of the court that the warrant in question was not defective on its face because of any such defects as complained of by defendant Draper.

B. *Illegality of the Search of the Premises Because of the Presence of Security Personnel of the Bell Telephone Company.*

It is clear that under Pa.R.Crim.P. 2004, a search warrant must be executed and served by a law enforcement officer. It is clear from the testimony at the preliminary hearing that Trooper James R. Harris, Jr., of the Pennsylvania State Police, executed and served this warrant, together with other members of the Pennsylvania State Police.

Defendants would have us hold that the presence of employes of Bell Telephone Company at the time of the search was such as to render the search illegal. This, we are not prepared to do.

The testimony was that the Bell Telephone employes were utilized in order to assist the State Police in identifying the items to be seized. We find defendant's contention that Trooper Harris and the other State Police officers were acting as agents for Bell Telephone Company to be essentially without merit. Counsel for defendant having cited no authority which would specifically prohibit such activities by the Bell Telephone Company in assisting the Pennsylvania State Police, we must deny defendant's motion in this respect.

C. *Alleged Improper Contamination of Evidence by the Pennsylvania State Police by Turning Items Seized Over to the Bell Telephone Laboratories in New Jersey for Examination.*

Again, counsel for defendant has submitted no authority that such a procedure is illegal. The cases cited by defense as authority for a due process requirement of prior judicial approval before such property is transferred from a government agency to private individuals give no credence to the argument of defense counsel, and serve as a puzzle-

ment to the court as to why they were utilized for such authority.

We agree with the position of the Commonwealth that if the chain of evidence has been so contaminated by this procedure that the introduction of the evidence is thereby rendered untrustworthy and unreliable, such issues should be raised by the defense at the time of trial, at which time the court will deal with same. At this time, the court does not hold that this is a matter which would require that the evidence obtained in this case be suppressed. . . .

### III. CONSTITUTIONALITY OF SECTION 910 OF THE PENNSYLVANIA CRIMES CODE

Counsel for defendant Draper is quite correct that criminal statutes must give reasonable notice of the prohibited conduct to the person charged and that statutes which fail to provide such notice violate due process. The statement that the specificity of the statute must be judged in light of the conduct of the accused is also a correct statement of law: Com. v. Heinbaugh, 467 Pa. 1, 354 A. 2d 244 (1976). However, we do not feel that the statute in question is subject to such constitutional infirmity. We believe it does give reasonable notice as to what will be complained of as illegal conduct, and that the standards of the statute are not so vague, indefinite, and incapable of application so that enforcement would violate due process. Furthermore, in light of the conduct of defendant himself under the Heinbaugh test, we find that the requirements of specificity with respect to this statute are met, and that as applied to defendant's conduct, the statute is not unconstitutionally vague.

## FINDINGS OF FACT

1. An investigation of telephone fraud in the Cresco 595 exchange area was conducted by Bell Telephone Company security personnel on October 17, 1977, which resulted in their contacting the Pennsylvania State Police.

2. Thereafter, on October 18, 1977, a search warrant was obtained by the Pennsylvania State Police from District Magistrate Marjorie J. Schumaker, which was executed at the residence of defendants John Draper and Wortley Andrew Wright, Jr.

3. Pursuant to said warrant, certain evidence was seized and defendants were arrested and charged with numerous offenses, including those now before the court, conspiracy, theft of services, and possession of a device for theft of telecommunications services.

## CONCLUSIONS OF LAW

1. The Commonwealth's evidence has failed to establish a prima facie case against defendant Wright on all charges.

2. The Commonwealth's evidence has failed to establish a prima facie case against defendant Draper on charges of conspiracy and theft of services.

3. The Commonwealth's evidence is sufficient to establish a prima facie case against defendant Draper on the charge of possession of the device for theft of telecommunications services.

4. The search warrant in question is valid on its face, and meets the "two-prong" test of Aguiliar v. Texas, and is supported by probable cause.

5. The search warrant was properly executed by the Pennsylvania State Police, and any participation by Bell Telephone personnel does not render the search and seizure pursuant thereto invalid.

6. Any subsequent turning-over of evidence by the Pennsylvania State Police to Bell Telephone personnel for examination and analysis does not require suppression of such evidence.

7. The warrant in question was couched with sufficient specificity so as not to be constitutionally infirm as a general one.

8. Section 910 of the Pennsylvania Crimes Code is not unconstitutionally vague and ambiguous as applied to the conduct of defendant Draper herein.

## ORDER

And now, June 5, 1978, the motion of defendant Wortley Andrew Wright, Jr., to quash the magistrate's return is granted as to all charges. The motion of defendant John Thomas Draper to quash the magistrate's return is granted as to charges of theft of services and conspiracy, and denied as to possession of a device for theft of telecommunications services. The district attorney is directed to file no information against defendant Wortley Andrew Wright, Jr., and to file no information against defendant John T. Draper as to charges of theft of services and conspiracy.

The motion of defendant John T. Draper for suppression of evidence is denied. All such evidence received by the search and seizure on October 22, 1977, and evidence related to the examination, testing, and operation of same shall be admissible at trial.

The motion of defendant John T. Draper to dismiss the charge of possession of a device for theft of

telecommunications services due to unconstitutionality of section 910 of the Pennsylvania Crimes Code is denied.

All other motions of defendant Wortley Andrew Wright, Jr., are dismissed as moot, including defendant Wright's motion for severance.