STATE OF NORTH CAROLINA v. RICHARD A. STURKIE

No. 8727SC1099

(Filed 6 September 1988)

1. **Searches and Seizures § 13— warrantless search of outbuilding—consent given by owner—evidence admissible**

   The trial court did not err in allowing into evidence property obtained as a result of a warrantless search of an outbuilding which defendant had been given permission to use for storage purposes where defendant's sister was the owner of the outbuilding, had extensive use and control thereof, and voluntarily gave consent to its search and seizure of items therein.

2. **Searches and Seizures § 26— warrantless search—tip from confidential informer—informer not proven reliable—insufficient showing of probable cause**

   The trial court erred in allowing into evidence property seized without a warrant from an outbuilding owned by defendant's sister where officers acted

on the basis of a tip from a confidential informant whose reliability had not been established; the officers did not know at the time of the seizure that a crime had been committed; and the officers had no knowledge that the goods were contraband.

APPEAL by defendant from *Kirby, Judge.* Judgment entered 14 July 1987 in Superior Court, GASTON County. Heard in the Court of Appeals 31 March 1988.

Defendant was tried and convicted upon an indictment proper in form charging him with felonious possession of stolen goods. From judgment imposing an active sentence of five years, defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General L. Darlene Graham, for the State.*

*Frank Patton Cooke, by Malcolm B. McSpadden, for defendant-appellant.*

JOHNSON, Judge.

The State presented evidence tending to show the following.

The Gaston County Police Department received information from a previously unknown confidential informant that Rocky Moore, Drew Phillips, and defendant Richard Sturkie "were doing break-ins" using a yellow vehicle. The informant also told the police that Moore and defendant were selling the stolen merchandise at the Exxon station at Hickory Grove Road and Four Points. After receiving this information, the police established a surveillance team to follow them and to monitor activity at the Exxon station.

W. A. Jeter, investigator for the Gaston County Police Department, testified that he was a member of the surveillance team assigned to watch a vehicle and three individuals, one of whom was defendant. On 23 October 1986, he saw defendant and Rocky Moore traveling together in a yellow car, which belonged to Teresa Sturkie, defendant's wife. Detective Jeter, who maintained radio contact with the other members of the team, followed the car to the Exxon station on Hickory Grove Road. He observed defendant take a chain saw from the trunk, crank it up, and apparently display it to two persons at the service station.

He also observed defendant and Moore take two chain saws, a bow and arrow, and something wrapped in a canvas sack into the rear of the service station. Defendant and Moore then left in the car for a short period of time. Upon their return, they loaded the chain saws and other materials in the car. Next, they left in the car and drove into Mecklenburg County and proceeded to the residence of Kathy Baxter, defendant's sister. Thereafter, defendant and Moore were observed taking items out of the yellow car and placing them into an outbuilding on Kathy Baxter's property.

Mrs. Baxter was contacted by the police and was brought to her residence. The police informed her of her rights and requested permission to search the outbuilding. She informed the police that defendant had called her and requested if he could use the outbuilding to store some items. She informed the police that she had given defendant permission to store some items in the building and that defendant probably had the key. The building was locked with a key-type padlock. Mrs. Baxter gave her consent to search the building and signed a printed form. They were unable to locate the key so the police removed the lock with bolt cutters.

A search of the outbuilding revealed five long rifles, which were wrapped in a brown cloth wrapping, chain saws, a bow and arrows along with some lawn chairs, a lawn mower and similar outdoor items. The items referenced in the indictment were found in the outbuilding, and Mrs. Baxter was told that the property may have been stolen. Some of the items were later determined to be the property of a Mrs. Norville. At the time of the search, there were no police reports in existence concerning a burglary of the home of Mrs. Norville nor was there any description of property alleged to be missing or stolen from her home. The police did not seek or obtain defendant's permission to search the outbuilding.

Mrs. Baxter testified on voir dire examination that although she allowed defendant to store some of the property in the outbuilding, various items of property belonging to her and her family were also kept in that outbuilding. She further testified that she purchased the outbuilding; that she felt free to go in and out the outbuilding as she chose; that defendant paid no rent for the

use of the outbuilding and that there was no agreement that defendant was to have exclusive use of the outbuilding.

Defendant's evidence tended to show the following.

Rocky Moore testified that he was in possession of the property in question after he had stolen it from the Norville residence, and that he approached defendant and asked him if he could store property that he owned without indicating to defendant that the property was stolen. Defendant was unable to store it at his house, but after asking his sister, Kathy Baxter, he was able to store it for Moore in her outbuilding.

[1] In his first Assignment of Error, defendant contends that the trial court erred in allowing into evidence property obtained as a result of a warrantless search, to which the owner consented, of an outbuilding which defendant had been given permission to use for storage purposes. We cannot agree.

A person may consent to a search of premises he or she jointly uses or occupies with another, and evidence found pursuant to such a search may constitutionally be used against that other if the person giving consent to the search has rights of use or occupation at least equal to those of the other. *State v. Melvin*, 32 N.C. App. 772, 233 S.E. 2d 636 (1977). Furthermore, G.S. sec. 15A-222 allows a law enforcement officer to conduct a search and make seizures without a warrant if voluntary consent is given by a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to search the premises.

Defendant asserts that he had the exclusive right to use the outbuilding and therefore Mrs. Baxter had no authority to consent to a search. At best, defendant had joint use of the outbuilding with Mrs. Baxter. In the case *sub judice*, evidence was presented, and findings of fact consistent therewith were made, to the effect that Mrs. Baxter was the person with extensive use and control of the outbuilding searched and that she voluntarily gave consent to a search of the outbuilding and to a seizure of the items within. The evidence adduced at voir dire therefore supported the court's findings of fact. This assignment of error is without merit.

[2] In his second Assignment of Error, defendant contends that the trial court erred in allowing into evidence property seized by

police without foreknowledge that it was stolen, that a crime had been committed, and that the property was contraband, in violation of his constitutional rights. We agree.

Whether a seizure is reasonable, and therefore constitutional, is to be determined upon the facts giving rise to the individual case. *State v. Beaver*, 37 N.C. App. 513, 246 S.E. 2d 535 (1978). A seizure of an item in plain view is constitutionally permissible if the officer making the seizure *has probable cause to believe that the object seized constitutes contraband or evidence of a crime.* *State v. Howard*, 56 N.C. App. 41, 286 S.E. 2d 853 (1982). Furthermore, "[a] good faith belief is not enough to constitute probable cause, unless the faith is [']grounded on facts within knowledge of the [officer][,] which, in the judgment of the court, would make his faith reasonable.'" *Beaver*, at 518, 246 S.E. 2d at 539, *quoting, Carrol v. United States*, 267 U.S. 132, 161-62, 69 L.Ed. 543, 555, 45 S.Ct. 280, 288 (1925).

The evidence reveals that the officers received information from a confidential informant that defendant, Rocky Moore, and Drew Phillips were involved in break-ins and larcenies, and that these individuals were selling stolen items at an Exxon station. However, this confidential informant had not been proven reliable because this was the first instance when the police had received information from him. Based upon this information, the officers conducted surveillance of the individuals and observed them at the Exxon station. On one occasion they observed defendant and Rocky Moore displaying to someone a chain saw which they had retrieved out of defendant's wife's car. On another occasion they observed defendant and Rocky Moore counting cash and dividing money.

The evidence further reveals that the officers followed defendant and Rocky Moore to Mrs. Baxter's residence and observed them place certain items in her outbuilding. In addition, the officers had information that Rocky Moore had an extensive criminal record. At the time the officers searched the outbuilding and seized the goods, they had no concrete information that the goods were in fact stolen. The officers learned that the goods were stolen one week after they had been seized. The initial basis upon which the officers relied to perform the search and seizure was the informant's tip.

Critical to any constitutional validity of warrantless seizures is the reliability of the information from the informant. In the context of a search conducted pursuant to a warrant, *Illinois v. Gates*, 462 U.S. 213, 76 L.Ed. 2d 527, 103 S.Ct. 2317 (1983), established that in determining probable cause in actions involving informants, a "totality of the circumstances" approach would now be utilized. The *Gates* opinion overrules the more rigid two-pronged test established by *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964) and *Spinelli v. United States*, 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969), which required affidavits supporting a warrant to demonstrate (1) the basis of the informant's knowledge and (2) past reliability of the informant.

In *State v. Tickle*, 37 N.C. App. 416, 246 S.E. 2d 34 (1978), officers conducted a warrantless search of a defendant's car and seized contraband based on a tip by an informant who had not previously supplied reliable information. Defendant alleged that information from a previously unknown informant was not sufficient to constitute probable cause of a warrantless search of an automobile unless the informant also relates facts which show that he is reliable and his information dependable. This Court held that the officer had reasonable grounds to believe that defendant was carrying contraband in his automobile when confronted with the information supplied by the informant. This Court used an *Aguilar-Spinelli* analysis in finding that the following facts were of primary importance in reaching its decision: the informant supplied very detailed information to a police officer, an independent verification by the officer corroborated the tip, and the informant had been personally involved in a criminal transaction with defendant one hour prior to the stop and search, i.e., possession of marijuana.

Even using a totality of circumstances analysis, we find *Tickle* to be distinguishable and helpful in our analysis of the case *sub judice*. The confidential informant in this case did not reveal how he or she obtained the knowledge that the merchandise was stolen, and the officers could not testify as to the informant's reliability. Noticeably absent is any indication that the informant conducted, participated in, or implicated himself or herself in any criminal transactions with defendant involving stolen goods. Knowledge of such details would give rise to a reasonable in-

ference that the informant had access to reliable information about the suspect's illegal activities.

We note that the informant did inform the officers of the location of the alleged illegal activity and the color of the car defendant would be driving. Although the police attempted to verify the limited details of the tip, applying a totality of the circumstances analysis, we do not believe that the verified information included details that would ordinarily be known only to someone familiar with the suspects and their plans and activities.

Accordingly, we do not believe that this information provided an articulable basis to suspect that the goods were contraband and thus allow the officers to seize the items from the outbuilding. Thus, defendant's motion to suppress the evidence seized by the search should have been granted.

Because defendant's motion to suppress the evidence should have been granted, we need not address defendant's remaining assignments of error.

New trial.

Judges BECTON and GREENE concur.