**UNITED STATES of America**

v.

**William Kirk MIXON.**

**Crim. A. No. 88-0547.**

United States District Court, E.D. Louisiana.

July 3, 1989.

Walter F. Becker, Jr., Asst. U.S. Atty., New Orleans, La., for plaintiff.

John Reed, New Orleans, La., for defendant.

### ORDER & REASONS

MENTZ, District Judge.

The motion of defendant, William Kirk Mixon, to supress, was submitted on a prior date without oral argument. The Court, after reviewing the motion, the memoranda of counsel, the record, and the law, denies defendant's motion for the reasons set forth below.

On January 11, 1986, United States Customs Special Agent Kenneth Luzak obtainted a warrant from a federal district judge to install an electronic transponder (a "beeper") inside a Cessna 210 D aircraft bearing FAA Registration N3799Y located at the Vicksburg Municipal Airport in Mississippi. The Customs Service suspected that the plane was being used to smuggle illegal drugs into the United States. On January 12, 1986, the transponder was installed and, over the next few weeks, the

Customs agents tracked the movement of the aircraft by monitoring the transponder.

Defendant is charged with conspiring to import into the United States approximately five hundred (500) pounds of marijuana, in violation of federal law. The defendant moves to supress all the evidence derived from the use of this transponder on the ground that there did not exist probable cause for issuance of the order authorizing its installation and monitoring. The Government argues that there existed probable cause for issuance of the order and, in the event the Court finds probable cause lacking, argues that the evidence is admissible under the "good faith" exception to the exclusionary rule.[1]

## I. The Affidavit

The affidavit setting forth defendant's allegedly illegal activities was executed by Kenneth D. Luzak, Special Agent with the United States Customs Service, Office of Enforcements Air Smuggling Group, who testified as follows. Agent Luzak stated that on January 7, 1986, he received information from an informant (referred to as a "confidential source" in the affidavit), indicating that a Cessna 210 D aircraft was at the Vicksburg Municipal Airport and that the parties representing themselves as responsible for the aircraft had requested that wing tip tanks and bladder tanks be installed in the aircraft. Two days later, on January 9, he met with the informant near Vicksburg, Mississippi, whereupon the informant indicated that two men had approached an associate of his on January 6, 1986, to install the bladder tank and wing tip tanks. The informant further told Agent Luzak that on or about January 7, 1989, he agreed to install the wing tip tanks and that the two men had paid $4800.00 cash for the installation.

Agent Luzak then conducted independent research to determine the effect the wing tips would have on the plane. Through U.S. Customs pilots who are familiar with this type of aircraft, Agent Luzak determined that the wing tip tanks would in-

crease the plane's fuel capacity by 30 gallons to approximately 80 gallons, allowing the aircraft to fly approximately seven hours, and that a flight of this length would allow the aircraft to leave Vicksburg, Mississippi and arrive in the Yucatan Peninsula without refueling.

Also at the January 9 meeting, the informant told Agent Luzak that the two men, Kurt and Fred, came several times daily to the hanger inquiring as to when the aircraft would be finished because they would be heading to Mexico as soon as the work is completed. Agent Luzak further testified that Mexico is a source country for narcotics.

Finally, the informant told Agent Luzak at the January 9 meeting that the two men in question drove a blue Ford long-bed pickup with a camper on the back bearing a Louisiana license plate and that both men were staying at the Holiday Inn in Vicksburg, Mississippi.

Agent Luzak corroborated this information; he identified the vehicle at the Holiday Inn in Vicksburg, Mississippi, bearing Louisiana registration T610883, and observed that the vehicle was occupied by two men. The vehicle registration number was traced and it was determined that the vehicle was registered to Alex A. Vega, Jr. of New Orleans, Louisiana, who is an identified violator of regulations enforced by the Bureau of Alcohol, Tobacco and Firearms.

Agent Luzak also attested that he believed the occupants he saw in the vehicle to be Frederick Cody Magee, who is currently under investigation by the Drug Enforcement Administration, Dallas, Texas, and that in 1981, Magee was arrested in Dallas for possession of 120 quaaludes and five guns. Agent Luzak further testified

[t]hat in 1984 Magee was suspected of sale of marijuana in Dallas, Texas. That in 1985 Magee was convicted of conspiracy to sell one ton of marijuana in Dallas, Texas. That the El Paso Intelligence Center (EPIC) indicates from their

---

1. The Government informed the Court by telephone that it agrees that the defendant has standing to challenge the constitutionality of the

search. Therefore, the standing issue is not before the Court.

records, Magee has been involved in narcotic trafficking all over the United States as well as foreign. Records now indicate Magee is involved in the financing and smuggling of cocaine from South America. That during the conversation Affiant had with personnel at the El Paso Intelligence Center the computer stopped printing after printing out at least 6 feet of information.

Affidavit, at 4.

Finally, Agent Luzak stated that he believed the other occupant of the vehicle to be John Joseph Matrone of Syracuse, New York. The affidavit lists Matrone's criminal record as follows: 1) in 1974 he was arrested in Shreveport, Louisiana, for forgery; 2) in 1980 he was arrested for fraud by wire in Wilmington, Delaware; 3) in 1980 he was arrested and convicted of fraud by wire and aiding and abetting in Baltimore, Maryland; and 4) in 1980 he was arrested for extortion in Rochester, New York.

The affidavit also shows further corroboration on Agent Luzak's part in that he personally observed the wing tip tanks being installed in the Cessna 210 D, FAA Registration N3799Y, on January 10, 1986, and further observed that at least one of the rear seats of the aircraft had been removed from its rails. Agent Luzak attested that these facts are identical to observations made in other aircraft used to smuggle controlled substances. Finally, the affidavit reflects that Agent Luzak knew that on January 11, 1986, the suspects attempted to buy a VHS radio, typical of an air to ground radio used in flying an aircraft, from Radio Shack in the Pemberton Mall in Vicksburg, Mississippi.

## II. Analysis

The issue before this, the reviewing court, "is simply to ensure that the [judge who issued the order authorizing the installation of the transponder and the monitoring of the aircraft] had a 'substantial basis for ... conclud(ing)' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 217, 80 S.Ct. 725, 736, 4 L.Ed.2d

697 (1960)). Defendant argues that the foregoing affidavit does not establish probable cause because the observations were made by a confidential informant who was not established as being reliable and whose information, even if credited, is entirely consistent with innocent behavior. The Court finds that the facts set forth in Agent Luzak's affidavit provided a substantial basis for determining that there was probable cause that the plane would be used to transport drugs into America in an illegal manner.

"Probable cause exists where the affiant's evidence would support a reasonable belief 'that an offense has been or is being committed.'" *United States v. Flynn*, 664 F.2d 1296, 1304 (5th Cir.1982) (quoting *United States v. Melancon*, 462 F.2d 82, 89 (5th Cir.1972)). Contrary to defendant's allegation, "completely innocent activity can provide sufficient corroboration in some circumstances." *United States v. Little*, 735 F.2d 1049, 1055 (8th Cir.1984). In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court reformulated the standard for evaluating the validity of an affidavit used to support a warrant.

[Abandoning] the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637 (1969), [t]he Court instead adopted a more fluid analysis, taking the "totality of the circumstances" into consideration. An informant's "veracity" and "basis of knowledge," formerly analyzed independently, are now "better understood as relevant considerations in the totality of circumstances analysis." *Gates*, 103 S.Ct. at 2329. "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that

contraband or evidence of a crime will be found in a particular place." *Id.* at 2332. *Little,* 735 F.2d at 1054.

In *Gates,* the police received an anonymous letter stating that the the defendant would make a trip to Florida and back with a trunk full of contraband. "It was the 'corroboration of major portions of the letter's predictions' that persuaded the Court to hold the affidavit before it sufficient." *Little,* 735 F.2d at 1055 (citing *Gates,* 462 U.S. at 246, 103 S.Ct. at 2336). Similarly, though Agent Luzak did not describe the confidential informant as being reliable, all the information he told Luzak was subsequently corroborated. Agent Luzak conducted an independent investigation and personally verified all of the information provided by the informant. Thus, the Fourth Amendment requirement that there be a "conscientious assessment of the basis for crediting ... tips" is satisfied. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.

 Mixon's reliance on *Little* is misplaced. The affiant in *Little* did no investigation to corroborate the informant's information. All of the information in the affidavit in *Little* was consistent with lawful activity. Though a "confidential informant" in *Little* told the affiant that the plane would be used for illegal drug smuggling, the affidavit did not provide details of past cases wherein the informant gave reliable information. Based on these facts, the court found that the affidavit did not contain sufficient information to conclude that there was a fair probability that contraband or evidence of a crime would be found in the airplane. *Little,* 735 F.2d at 1055.

In contrast, the information disclosed to Agent Luzak by the informant was corroborated by investigation. From these facts, Agent Luzak made calculations and deductions based on his experience as an agent with the United States Customs Service, Office of Enforcements Air Smuggling Group, which conclusions may be considered in determining whether the affidavit establishes probable cause. *See Flynn,* 664 F.2d at 1304 ("in judging the sufficiency of an affidavit to determine whether

probable cause exists, we assess not the individual facts but 'the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observe as trained officers' ") (quoting *United States v. Clark,* 559 F.2d 420, 424 (5th Cir.1977), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977)). Agent Luzak's investigation, which corroborated all the information told to him by the informant, supports a reasonable belief that a crime was being or would be committed and that evidence of a drug smuggling crime would be found in the airplane. "To require anything more that the probable cause that existed here would place an unduly harsh burden on drug enforcement officers ... and would significantly undermine their legitimate and good faith efforts to follow procedural law and uncover crime." *United States v. Kupper,* 693 F.2d 1129, 1133 (5th Cir.1982) (citations omitted).

Accordingly,

IT IS ORDERED that the motion of defendant, William Kirk Mixon, to suppress is DENIED.